## VÉLEZ v. LLAVINA.

### APPEAL from the District Court of Mayagüez.

No. 778.—Decided June 26, 1912.

AUTOMOBILES—COMMON CARRIER.—In order that an automobile may be considered as devoted to the business of a common carrier it is necessary that the owner thereof employ the same regularly in the business of transporting passengers, conveying any one who pays the corresponding price. The fact that the owner of a private automobile hires it to certain friends, but not to everybody, does not indicate that his automobile is devoted to the business of a common carrier.

DAMAGES BETWEEN PRIVATE PERSONS.—There existing no Federal Statute regulating the matter of damages between private persons and there being no provision in the Consititution of the United States in regard to this subject there is no doubt that in accordance with sections 8 and 32 of the Foraker Act the Legislative Assembly has power to legislate on the subject. Therefore, the provisions of the Revised Civil Code governing this question are the only provisions to be considered in deciding this case.

AMERICAN JURISPRUDENCE—FAULT OR NEGLIGENCE.—American doctrine and jurisprudence are only applicable to obligations arising from the fault or negligence in so far as they are based on the provisions of the Civil Code of Porto Rico or are derived from general legal principles not in conflict with said code.

LIABILITY FOR ACTS OF OTHERS—FAULT OR NEGLIGENCE.—In accordance with the provisions of sections 1803 and 1804 of the Revised Civil Code, the general rule is that a person is liable for his own acts or omissions and if he should be called up to answer for the acts or omissions of others, this would be an exception to the general rule.

ID.—DUE CARE AND DILIGENCE—PRESUMPTION—SUBORDINATES.—The provisions of section 1804 of the Revised Civil Code attaching liability for the acts and omissions of another are based on the *juris tantum* presumption of fault arising from the fact that due care and vigilance to prevent the injury were not exercised over the acts of subordinates and, therefore, the last paragraph of section 1804 frees from liability persons who are bound for the acts of others when it is shown that they exercised all the diligence of a good father of a family.

ID.—EXCEPTION TO RULE AS TO LIABILITY—CIVIL PUNISHMENT.—Liability for the acts or omissions of another can be enforced only when the exception to the general rule that a person shall answer only for his own acts or omissions is clearly specified in the law, because as said liability has to a certain extent the nature of a punishment, though a civil one, the principle should be applied that no person can be punished, even civilly, except when the law has so provided specifically.

ID.—DRIVERS OF PRIVATE CONVEYANCES—COMMON CARRIER.—There is no provision whatever in section 1804 of the Civil Code nor in the other sections on this subject which makes the owner of an automobile or vehicle not devoted to the business of a common carrier liable for the negligent acts of the *chauffeur* of the automobile or driver of the vehicle.

ID.—SPECIFIC LAW —CONSTRUCTION OF LAW.—The wording of section 1804 of the Revised Civil Code prohibits courts of justice from fixing liability in cases not comprised in said section, for when a law specifies and determines the cases to which it is applicable, it cannot be applied to other cases not included therein according to the legal principle *expressio unius est exclusio alterius*.

The scope of the opinion delivered in the case of *Marrero* v. *López,* 15 P. R. R., 746, is discussed and explained in the opinion of the court.

ID.—COMMON CARRIER—DRIVER OF PRIVATE CONVEYANCE.—The owner of a private automobile or vehicle not being liable for the acts of fault or negligence of the person employed by him as *chauffeur* if said automobile is not a part of the business of a common carrier, and it not having been proven in this case that the defendant's automobile is such, the plaintiff has no cause of action against the defendant for the damages suffered by reason of the negligent acts of the defendant's *chauffeur*.

NEW TRIAL—DISCOVERY OF NEW EVIDENCE—PROOF OF ACTIVITY.—In order that a motion for a new trial based on the discovery of new evidence may be sustained it is necessary to show in the affidavits that the party exercised reasonable activity to discover and introduce said evidence at the first trial, the mere allegation of activity being insufficient.

The facts are stated in the opinion.

*Messrs. José Ramón Freyre* and *Herminio Díaz* for appellant.

*Messrs. José de Diego* and *Eduardo Acuña* for respondent.

MR. JUSTICE ALDREY delivered the opinion of the court.

Pastor Vélez Toro sued José Llavina in the District Court of Mayagüez for the recovery of a certain sum by way of damages, alleging in substance as ground for his claim that on June 19, 1910, while traveling on the highway between Mayagüez and San Germán, leading a horse, he was run over by an automobile, from which accident he had sustained several injuries; that this automobile belonged to an enterprise the

defendant owns for the daily conveyance of passengers, and it was piloted by *chauffeur* Juan Gonce, an employe of the concern, who at the time was acting as such employe of the defendant and within the scope of his duties as such; that the aforesaid automobile was piloted in a negligent and careless manner, this being the cause of the accident, in which there was no fault or negligence on the part of the plaintiff.

In his answer the defendant, José Llavina, denies, among other things, that either at the time of the accident or before he had had any automobile service for the daily use of passengers, he likewise denying that Juan Gonce was an agent or employe of any such enterprise. This denial he repeats in one of the positive averments of his answer, although adding that he has a private automobile for his own use which he sometimes lent or hired to certain friends without such employment ever assuming the character of a permanent service or business, and that on said automobile Juan Gonce is employed as *chauffeur*. He also denied the fault and negligence ascribed to his *chauffeur* and that the plaintiff was free from blame.

Trial having been had, the district court rendered judgment on August 19 last, dismissing the complaint with costs against the plaintiff. The plaintiff moved the court for a new trial, and from the order overruling said motion, as also from the judgment, he took the present appeal.

The opinion prepared by the court below sets out as a reason for its finding that the complaint is undoubtedly based on paragraph 4, section 1804, in connection with section 1803, both of the Revised Civil Code, and that although the plaintiff alleged that the automobile which had caused the accident belonged to an enterprise of the defendant's for the conveyance of passengers, he had not proven that the defendant, José Llavina, was at the date of the accident owner or manager of such concern nor that Juan Gonce was employed as *chauffeur* of any public enterprise whatsoever.

Before entering upon a consideration of the legal question

involved in said opinion and judgment, which issue is also raised in the appellant's brief, we must point out that the plaintiff did not produce any evidence to prove his affirmation—which was denied by the defendant—that the latter owned at the time of the accident an automobile service for the conveyance of passengers; that consequently the automobile that had caused the accident for which the plaintiff claims damages belonged to said concern, and that Juan Gonce was employed as *chauffeur* by any such line; and from the statement made by the defendant in his answer to the effect that he sometimes lent or hired to certain friends the automobile kept by him for his private use, without this constituting a permanent business or service, it cannot be inferred that he owned the public concern mentioned by the plaintiff. In order to be considered such public concern the automobile must have been regularly engaged in the carrying business, transporting from place to place anybody who paid the proper fare; and the fact of his hiring his private automobile to certain friends but not to everybody does not imply that his automobile was engaged in the business of carrying passengers.

It not having been proven, then, that the defendant owned any public service enterprise whatever for conveying passengers at the time the accident occurred which gave rise to this action, but it having been admitted that he kept said automobile for his private use and that it was piloted by Juan Gonce, employed by him as *chauffeur,* we may proceed to examine the question already pointed out by us and which constitutes the fundamental issue in this controversy.

Is the owner of an automobile not engaged in the carrying business but intended for his private use responsible for the fault and negligence of one of his employes acting as *chauffeur?*

To decide this question we must first determine which law governs the matter.

When, in 1898, the change of sovereignty occurred in this

Island, the authority of Spain being transferred to the United States, we had a civil code which regulated the matter of responsibility arising from fault or negligence, whether due to personal acts or to the acts of certain persons for which another was responsible.

Shortly after this the Congress of the United States passed the act generally known as the "Foraker Act,", section 8 whereof reads as follows:

"Section 8. That the laws and ordinances of Porto Rico now in force shall continue in full force and effect, except as altered, amended, or modified hereinafter, or as altered or modified by military orders and decrees in force when this act shall take effect, and so far as the same are not inconsistent or in conflict with the statutory laws of the United States not locally inapplicable, or the provisions hereof, until altered, amended, or repealed by the legislative authority hereinafter provided for Porto Rico or by Act of Congress of the United States."

This same act, under section 32, provides:

"Section 32. That the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable, including power to create, consolidate, and reorganize the municipalities, so far as may be necessary, and to provide and repeal laws and ordinances therefor; and also the power to alter, amend, modify, and repeal any and all laws and ordinances of every character now in force in Porto Rico, or any municipality or district thereof not inconsistent with the provisions hereof."

As a result of these powers the Legislative Assembly of Porto Rico in 1902 passed, and the Governor of the Island approved, the Revised Civil Code which, barring a few modifications, was substantially the Spanish Civil Code; and inasmuch as there is no Federal law governing the matter of damages between private persons, nor is there in the Constitution any provision with reference thereto, our legislative assembly has power to legislate upon this matter; and, therefore, only to our Revised Civil Code must we recur in this case for the purpose of deciding the question at issue, Amer-

ican doctrine and jurisprudence being applicable only so far
as they are based on the principles of our Civil Code, or are
derived from general principles of law not in conflict there-
with.

It being agreed that the laws of Porto Rico are the only
ones governing the matter of damages between private per-
sons we must note the fact that only two laws have been
enacted upon the subject, namely, "An act in relation to the
liability of employers for injuries sustained by their employes
while in their service," which has no bearing upon this case,
and the Revised Civil Code, from which we transcribe the
following sections, forming part of Chapter II, Title XVI,
Book IV, and dealing with obligations which arise from fault
or negligence:

"Section 1803. A person who by an act or omission causes damage
to another when there is fault or negligence shall be obliged to repair
the damage so done.

"Section 1804. The obligation imposed by the preceding section
is demandable not only for personal acts and omissions, but also for
those of the persons for whom they should be responsible.

"The father, and on his death or incapacity the mother, is liable
for the damages caused by the minors who live with them.

"Guardians are liable for the damages caused by minors or inca-
pacitated persons who are under their authority and live with them.

"Owners or directors of an establishment or enterprise are equally
liable for the damages caused by their employes in the service of the
branches in which the latter may be employed or on account of their
duties.

"The State is liable in this sense when it acts through a special
agent, but not when the damage should have been caused by the
official to whom properly it pertained to do the act performed, in
which case the provisions of the preceding section shall be applicable.

"Finally, masters or directors of arts and trades are liable for the
damages caused by their pupils or apprentices while they are under
their custody.

"The liability referred to in this section shall cease when the per-
sons mentioned therein prove that they employed all the diligence of
a good father of a family to avoid the damage."

The two foregoing provisions are an exact reproduction of articles 1902 and 1903 of our former Spanish Civil Code.

By the first section the general rule is established that a person is civilly liable for his own acts or omissions when there has been fault or negligence on his part.

Discussing this matter the learned commentator, Manresa, while commenting upon article 1902, which is section 1803 of our present code, observes:

"1. *Legal grounds of this class of obligations.*—This article lays down the general rule as to the imposition of obligations arising from fault or negligence. These have their origin in damage caused by a voluntary act or omission, though done without any punishable intention, wherefore the person who executed the act giving rise to, or occasioning the damage, or who, also voluntarily, incurred the omission which produced it, is the one called upon, in the first place, to sustain the expense or be liable for the reparation of the damage.

"The terms of this article clearly define the special character of this class of obligations, which although in certain cases owe their origin to a fact or positive act such as those arising from quasi-contracts, they differ from them, however, in that the latter proceed from a lawful and purely voluntary act, executed by the person upon whom the obligation is imposed, whereas those we are dealing with now have their origin in an unlawful act or omission, though this be not punishable and is sometimes involuntarily or even not the personal act or omission of the one liable therefor; for, as we shall see further on, there may be cases where the acts or omissions causing the damage may not be those of the person subject to the obligation who, for specific reasons, must be held responsible therefor, because in a certain manner they are imputable to him, despite the fact of his not having incurred them. But the rule established in this article refers only to the liability imposed upon the obligated person when the damage to be repaired has been caused by his own personal acts or omissions; and said rule rests precisely on the legal principle which underlies the whole theory of said obligations, according to which whoever causes a damage is bound to repair the same.

"Hence it appears that the only kind of fault and omission or negligence which can be made the subject of the present chapter is the one above defined in the second place; in other words, that which, without there existing a prior obligation, or the antecedent of a contract, causes a damage arising from an act or omission which is only

a civil offense—that is to say, that while unlawful, it is not a crime or misdemeanor punished by law—and even without these limits the terms or matter appertaining to this article should be restricted still further, said article referring only to the personal fault or negligence of the obligated person, but not to that arising from acts or omissions of persons other than himself.''

The principle contained in the code, which requires that a person should be held responsible for his negligent acts or omissions, is a just one, because third persons should not be called upon to suffer the injurious consequences of other people's negligence.

The general rule is, then, that a person is liable for his own acts or omissions, and if he is ever called upon to answer for the acts or omissions of others, this would constitute an exception to the general rule. Such exceptions are contained in the law and consist in imposing responsibility: (1) For damages caused by persons under the custody or dependency of the responsible party; (2) for those caused by animals kept by him for his own service, convenience, or recreation, or by those which he makes use of for the same purpose, though not his property; (3) for damages caused by the ruins of a building or resulting from the industry in which he is engaged, or due to some other specified causes; (4) for those caused by objects thrown or fallen from an inhabited house or part thereof. But as it appears to be repugnant to natural reason and to the general principle of law that any one should be held liable for the faults of others, legists have tried to explain the reason for these exceptions, and propounded different theories to justify them.

It does not seem to us proper, in an opinion written for the sole purpose of setting forth the grounds of a judicial decision, that we should enter upon an exposition and criticism of all these various theories. We shall therefore confine ourselves to making a brief reference to them, and determining on which of these theories are based the exceptions to the general rule contained in our Civil Code.

According to the Italian theory indorsed by Giorgi, Mosca, Sechi, and others, the liability contained in these exceptions is based on a presumption of *absolute* fault in choosing or watching, for which reason some of them exclude such liability when no freedom was allowed in the choice or when there was no possibility of vigilance.

Another theory, that originating in the preparatory labors on the French code, found the reason of such liability of one person for another, in the *utilization* of the services of the employe, animals, or things, because to this the damage was due, and they reached the conclusion of the presumption of absolute fault through those who were under his authority or dependency, a theory which was impugned by Lessona and others on the ground that such presumption *juris et de jure* was in contradiction to the natural order of things, according to which, instead of carelessness and remissness in the choice of employes, or of negligence in watching them, self-interest, as a rule, prompted one to select as employe or clerk a competent person, and by the same self-interest he was inclined to watch him; whence they concluded that a feigned or presumed fault is generally an injustice.

Others find the reason for this liability, either in the relation of *authority* or seigniory, in the *directions* which it behooves principals to give their subordinates, in the growing *danger* attending the present industrial organization, in *pecuniary interest;* and others in *representation*—that is, that the responsible party does juridically by himself what he does through the agency of another; whence the mere fact of a substitution carries with it the liability of the person substituted, some authorities declaring that representation or substitution is the cause of liability.

As to our Civil Code, it is based on the principle of the *juris tantum* presumption of fault derived from the fact that due care and vigilance were not bestowed on the acts of the subordinate in order to avoid the damage, for which reason the last paragraph of section 1804 relieves from liability per-

sons responsible for the acts of others when they prove that all the diligence of a good father of a family was employed by them to avoid the damage. Upon this point Manresa comments as follows:

"The cause of the obligation imposed is not, then, *representation,* nor *interest,* nor the necessity of having somebody to answer for the damage caused by one who can show no personality nor guarantee of solvency, but the implicit or presumed nonperformance of the duties of precaution and prudence imposed by the civil ties which bind the obligor to the persons for whom he must repair the damage done. This is why the code places this obligation among those arising from fault or negligence."

If, then, liability for the fault of another is an exception to the general rule, namely, that no one should answer but for himself, and so many theories had to be called up in order to justify civil punishment for the fault or negligence of another, such liability cannot be enforced unless the exception has been clearly specified in the law, for such liability being, to a certain extent, in the nature of a penalty, though a civil one, application should be made of the principle that no person can be punished, even civilly, except when the law has specifically so provided.

We are now prepared to answer the question propounded at the outset, upon which answer depends the determination of this litigation.

Confining now the question to that of liability for the acts of another, section 1804, hereinbefore quoted, contains in its first paragraph a confirmation of the preceding section to the effect that a person is liable for his own acts, and adds thereto the rule containing the exception of liability for certain third persons when it says that a person is liable for the acts of those "for whom they should be responsible." After reading this passage the question occurs to one's mind: "For whom should a person be responsible?"

Of course, when the law says "for whom they should be responsible," it is because the liability is only for the acts of

*certain specified persons,* and such specification must, therefore, be made by the law itself.

And so it is in fact, for the first paragraph is followed by others wherein it is provided that the father, or in default thereof the mother, is liable for the minors who live with them, guardians for their wards, etc. These paragraphs contain an enumeration of cases of liability for the acts or omissions of others, but we do not find therein that the owner of an automobile or vehicle, not engaged as a public carrier, should be liable for the negligent acts of his employe.

The terms in which the whole of this section is conceived take away from courts of justice all liberty to assign responsibility in cases not included therein, for when a law specifies and determines the cases where it is applicable, it cannot be applied to other cases not included therein, according to the principle of law *expressio unius est exclusio alterius.*

All the cases of liability are contained in the chapter to which reference has been made, and with respect thereto Manresa, on page 606 of his "Comentarios," from which we have quoted liberally, has this to say:

"* * *. There may, moreover, be cases where the act or omission giving rise to the damage or injury is not caused by the person liable for the consequent obligation, but by other persons bound to him by such ties as make him legally responsible for those acts which in fact were not executed by himself; while on the other hand the evil he is called upon to remedy may even originate in causes entirely foreign to his will. For this reason the law has had to establish its regulating standards in the matter, the respective regulation thereof constituting the only object of the present articles and of the remainder of this chapter."

Thus, then, inasmuch as in the cases specified in section 1804 of the Revised Civil Code, the owner of an automobile or vehicle is not made responsible for the acts, involuntary fault, or negligence on the part of his employe, acting as *chauffeur,* if the same does not form part of a public service enterprise, which latter circumstance has not been proven, we must con-

clude that the plaintiff has no cause of action against José Llavina, owner of an automobile intended for his private use, which, while piloted by *chauffeur* Juan Gonce, caused the damages complained of by Pastor Vélez Toro.

The courts are not legislators, and we would be assuming the functions of legislators were we to hold persons liable upon whom the law imposes no liability. If it be convenient and necessary, in view of recent inventions and accidents occasioned by them, that owners of automobiles or other apparatus not intended for public service should also be made responsible for their employes, this is a question for our legislative assembly to take up, and which does not come within our province. Our part is only to apply the law, such as it is, and if through its strict application something that the law has not provided for should be discovered, it may serve as a timely suggestion to legislators.

It is the first time that this question has been directly brought up for decision to this Supreme Court, for although in the case of *Marrero* v. *López et al.* (15 P. R. R., 826) there existed an analogous issue, indemnity for damages being claimed against Antonio López Martínez for acts involving fault on the part of his overseer, Nicomedes López, who was also sued and adjudged to pay damages, yet in that case the principal, Antonio López, was released from all claim, the only issue raised being as to whether or not his overseer had acted within the scope of his duties when he executed the act for which damage was claimed. This was the only question raised, which was decided by two of the Justices of this Supreme Court, the other Justices holding that because of the absence of a statement of the case there was nothing to consider, and the question as to whether or not the principal or master is liable for acts of his overseer was neither discussed nor decided.

In view of the foregoing, it is unnecessary to consider the evidence produced in this case, with reference to the fault or negligence characterizing the act of *chauffeur* Juan Gonce,

since it matters very little to the principal, José Llavina—the only defendant in this case—whether or not his *chauffeur* was negligent, he not being liable for the latter's acts.

For the same reasons it would be idle to take up the various errors assigned by the appellant with reference to the evidence, and we shall only consider the one which may have a bearing upon the case as viewed by us, namely, whether the plaintiff should have been allowed a new trial for the purpose of showing that the defendant was the owner of automobiles for the use of the public, as he had alleged in his complaint.

The motion for a new trial was based upon newly discovered evidence which the mover esteemed important, and by way of justification affidavits of Simón Carlo and Eduardo Riera were joined to said motion.

The new trial based on that ground was properly denied, because no diligence had been shown by the plaintiff to secure said evidence before the trial; and, moreover, it appears from the record that both witnesses were present in court, having been produced by the plaintiff for the purpose of proving other facts which he considered material to his case, but which were rejected. Their testimony as to the issues raised in their affidavits had not been offered, nor has it been proven that the plaintiff was unaware of their being in a position to testify upon these facts; nor has it even been shown that they were questioned in regard thereto.

There appears to have been an absolute lack of diligence when this should have been affirmatively established.

"Affidavits should show that the party used reasonable diligence to discover and produce the evidence on a former trial." (*Stoakes* v. *Monroe,* 36 Cal., 388.)

"It is not enough to allege diligence, but it is necessary to show that due diligence was employed to discover the evidence and produce it at the trial." (*Jack* v. *Cooke,* 6 Cal., 164; *Von Glahn* v. *Brennan,* 81 Cal., 261; *Heintz* v. *Cooper,* 104 Cal., 668.)

For the foregoing considerations the judgment dismissing the complaint should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.

Mr. Justice MacLeary dissented.

### DISSENTING OPINION OF MR. JUSTICE MACLEARY.

This record having been first assigned to me, as *ponente,* an opinion was prepared and submitted to the full bench to be adopted as the opinion of the court. The tribunal not concurring, another justice was assigned to the duty of writing the majority opinion, and I will accordingly use my own opinion as the basis of a dissenting one.

However, it can merely serve as the warp, some new matter being necessarily introduced as the woof to make the web complete.

In this case, then, not being able to agree with my colleagues in their views of the law governing the same, I am compelled to dissent and feel it incumbent on me to state at some length my reasons for so doing. They are as follows:

This is a suit for damages occasioned by personal injuries. It appears from the record that on June 19, 1910, the plaintiff, Pastor Vélez Toro, was walking along the public road near Mayagüez leading a horse when he was struck by an automobile belonging to the defendant, José Llavina, driven by a chauffeur named Juan Gonce, in the employ of the defendant. The plaintiff received several wounds as the result of the said collision, from which he was confined in the hospital San Antonio at Mayagüez for 25 days and at a private house for 12 days longer. He alleged and proved that he suffered physical pain and mental anxiety, was unable to write, and lost his employment, thereby incurring damages.

On a trial, which occurred in the month of August, judgment was rendered by the District Court of Mayagüez against

the plaintiff for the reasons expressed in an opinion set out in the record and which reads as follows:

"This is an action for the recovery of damages alleged to have been sustained by the plaintiff, who was caught by an automobile belonging to the defendant, José Llavina, said vehicle having been conducted at the time of the accident by the chauffeur, Juan Gonce.

"There is no doubt that the complaint presented in this case was based on paragraph 4, section 1804, in connection with section 1803 of the Revised Civil Code.

" 'Section 1803.—A person who by an act or omission causes damage to another where there is fault or negligence shall be obliged to repair the damage so done.

" 'Section 1804.—The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

" 'Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employes in the services of the branches in which the latter may be employed or on account of their duties.'

"The plaintiff in his complaint alleged, among other things, the following: That previously and at the time of the accident which is the object of this suit the defendant was the owner of a line of automobiles with a. license issued by the Commissioner of the Interior, said line doing business between Mayagüez and San Germán, the management and superintendence of said machines for carrying passengers and other purposes being in charge of the chauffeur, Juan Gonce, an employe or agent of the defendant, with authority therefor; and when the accident occurred said chauffeur, Juan Gonce, was discharging one of the duties for which he was employed by the defendant in this case—that is, said chauffeur, Juan Gonce, was acting within the limits of his employment through an express or tacit command of his principal, José Llavina.

"The defendant denied all the material facts of the complaint, alleging, moreover, other positive facts in his answer."

It cannot escape observation, on an examination of the record, that in this opinion of the trial court, although a statement of the pleadings is attempted, it lacks fullness and fairness, rejecting any view of them save that of the defend-

ant.  With this observation I will continue to quote from the findings of the trial court, to wit:

"In view of the evidence introduced the court finds:

"That on June 19, 1910, and on the road from Mayagüez to San Germán the plaintiff, Pastor Vélez, sustained personal injuries which were produced by an automobile that was conducted by the chauffeur, Juan Gonce; said plaintiff having required medical assistance as a consequence of said injuries and was confined in a hospital for about 25 days.  It was shown that the place where the accident occurred is not a part of the urban district of Mayagüez.  It has not been shown that the plaintiff on account of the injuries sustained has been disabled of his right arm and leg or that he has been disabled for work.  It has also been shown that the automobile causing the accident was the property of the defendant, José Llavina, and was not on that day in the service of carrying passengers, but that said automobile was being brought to Mayagüez (sent by its owner) to be repaired and was conducted by the chauffeur, Juan Gonce.

"It seems to the court very improbable, if not impossible, that the accident should have occurred in the manner referred to by the plaintiff and his witnesses, who are declared to have been present when the same took place.  The court entirely believes the testimony of the mechanic, Agustín Fábregas, who was a witness for the plaintiff.

"The court finds that it was not shown that the defendant, Llavina, was the owner or manager at the time of the accident of a line of automobiles engaged in the service of carrying passengers between Mayagüez and San Germán, and even less that Juan Gonce was then an employe in the service of said line nor that he was in the discharge of any duties as a chauffeur in connection with said line.

"For the reasons aforesaid the court is of opinion that a judgment should be rendered dismissing the complaint, with costs upon the plaintiff.  Mayagüez, Porto Rico, August, 1911.  (Signed) D. Sepúlveda, District Judge."

It may be remarked in passing that all the errors, if such they were, of the trial court were approved and adopted in the majority opinion of this court, and they can be treated of in the same general discussion.  It is desirable to perform that duty with the utmost courtesy, never losing sight for a

moment of the high regard entertained by the writer for his
colleagues and their views on legal questions.

I find myself disagreeing not only with the opinion of the
trial court but with the views held by the distinguished coun-
sel who argued this case orally on both sides at the hearing
in the appellate court. I am not quite certain as to what may
be the legal position taken by the attorney for the plaintiff
who brought the suit and tried the case in the court below. I
have formed my opinion on the case from the facts as pleaded
and proved and from the jurisprudence applicable thereto, as
I understand it to exist.

After confining the pleadings to the ownership by the de-
fendant of a line of automobiles running for him and show-
ing the lack of evidence to prove this allegation, the decision
of the case is rested on the construction given to two isolated
sections of our Civil Code. This view of the *allegata* and the
*probata* as well as the law and the facts appears to me to be
altogether too narrow.

It seems to me, from the opinion of the trial court and the
judgment rendered in accordance therewith, that the district
judge had an erroneous view of the liability of an owner of an
automobile for accidents occurring on the public roads of this
Island. He confines the responsibility of the owner of a
vehicle for the negligence of the chauffeur to such defendants
as are ''owners or directors of an establishment or enter-
prise,'' as is expressed in the fourth paragraph of section
1804 of the Civil Code. In this he is sustained by the opinion
of this court. But in my opinion this is a limitation not war-
ranted by a proper view of the law. The section mentioned
defines the liability and fixes it not only for personal acts but,
when properly interpreted, for those of the persons for whom
they should be responsible, as stated in the succeeding section.
The general liability is defined in section 1803 of the Civil
Code quoted by the trial judge in his opinion. The learned
Spanish commentator, Manresa, comments on the liability of
employers for the acts of their employes as follows:

"For the same reason any person who on account of his trade, profession, or any other circumstances has another in his employ or under his control or custody must require him to perform his task with the necessary activity and diligence; and if for want of these qualifications damage should be caused, he who has in his employ or under his control the person who caused the damage should be liable to the injured person either because he has not exercised due care in the supervision of the acts of his employes or subordinates or because as the latter lacked, as a rule, the means to answer in damages personally, it is not equitable that the person who is injured through the fault of another should be deprived of a sufficiently effective action to claim compensation," etc.   (12 Manresa's Comm., 608 and 609.)

"The liability imposed by section 1903 (which is identical with section 1804 of our code) on the persons who may be held liable for others is not a subsidiary one but a direct one, as required by the cause that produced it; and it is so established by the law of reason of the noncompliance with the duties imposed by the special connection of authority or superiority existing between the person who must repair the damage and the person who caused the same by his acts or omissions."   (12 Manresa's Comm., 611 and 612.)

The same learned author, in speaking of the liability of owners for damages caused by animals running at large and trespassing, says:

"Hence, in view of that inability (meaning inability to control the instinct of animals) it is admitted that any person who owns or uses an animal on account of its usefulness or for his comfort or recreation is of course liable, by the mere fact of its possession or use, for all the contingencies and damages that may arise, and implicitly accepts, likewise by virtue of this fact, the consequent liability, and this presupposes the existence of an implied or tacit consent thereto on the part of the possessor of or person using the animal which caused the injury, with the obligation to answer for the same.   This is the construction that it is thought should be given in actions for damages to the maxim, '*Cujus commoda ejus incommoda, nam commoda et incommoda inter se reciprocantur*'; for although the damage cannot be considered *stricto jure* as a direct consequence of the ownership or use, it is always an indirect or remote consequence which should be explained on the principle *cause causae*

*est causa causati* whenever the reason for the liability is sought to be determined.'' (12 Manresa's Comm., 621 and 622.)

The learned commentator continues further on to say:

"The meaning of section 1905 (which is identical with section 1806 of our code) is quite plain and it explicitly appears from the very language thereof. Punishment is inflicted thereby on the person through whose fault or negligence damage is caused by animals when that person could and should have prevented the damage from being done by the use and employment of said animals, but who did not take the necessary precaution for the prevention thereof, or because, even taking said precaution, said damage could not have been avoided; for the risk incident to their use ought to be thrown on him because from the moment he makes use of said animals he thereby voluntarily accepts the consequences that might ensue from said use. Therefore, when the damage caused is the proper and natural consequence of the use of the animal doing the damage, independently of any extraneous interference or any other cause that cannot be imputed to the possessor or person using said animal, they must bear said consequences, indemnifying losers for the damage that has been caused whether or not there is negligence or want of care, because they knew the risk they were running by possessing or using said animals.'' (12 Manresa's Comm., 626 and 627.)

We have also quoted this same language from Manresa in the case of *Redenger* v. *Crespo,* decided by this court on the 8th of March last, and it is quite as applicable in this case as in that. The underlying principle is the same as in the present case, or at least entirely analagous—the responsibility of an employer for the negligent acts of his employes done while discharging their duties in the scope of their employment.

Manresa thus clearly recognizes the applicability of the doctrine *respondeat superior*.

Other civil law writers say plainly that one of the grounds of the liability of one person for the faults committed by another is on account of the relation of representation—that is to say, that the person becoming liable juridically per-

forms by himself what he does through another person—
and therefore that the mere fact of substitution carries with
it the liability of the substituted person or the principal, and
it is held by some of them that the representation or substi-
tution is what originates the liability. This is in effect the
doctrine of *respondeat superior* announced by the recognized
leaders of European thought on this subject.

In the case of *Marrero* v. *López,* reported in 15 P. R. R.,
746-756, though this court was divided on a question of prac-
tice, it was tacitly recognized by the whole court that a prin-
cipal is responsible for the torts of his servant while acting
within the scope of his duties and in the line of his employer's
business, and that the doctrine *respondeat superior* is in force
in this island under the entirely harmonious authority both of
the Spanish and the American jurisprudence.

And our American jurisprudence in regard to the prin-
ciple of *respondeat superior* is consonant with the Spanish
on this subject, and is clearly expressed in 34 Cyc., as follows:

"*Respondeat superior* literally 'Let the principal answer.' A
general rule which charges the master with liability for the servant's
negligence in the master's business causing injury to third persons;
founded on this principle, that he who expects to derive advantage
from an act which is done by another for him must answer for any
injury which a third person may sustain from it." (See 34 Cyc.,
pp. 1673 and 1674, and notes 97 and 98 and cases there cited; also
Broom's Legal Maxims, 843.)

The maxim *respondeat superior* (let the principal be held
responsible) is equivalent to *qui facit per alium facit per
se* (whoever does an act by means of another does it him-
self). The former applies to matters of tort and the latter to
matters of contract. (Broom's Legal Maxims, 816 and 843.)

The doctrine of *respondeat superior* is clearly stated by
Dr. Broom in the following unmistakable language:

"The principle upon which a master is in general liable to answer
for accidents resulting from the negligence or unskillfulness of his
servant is that the act of his servant is in truth his own act. If the

master is himself driving his carriage and from want of skill causes injury to a passer-by he is, of course, responsible for that want of skill.   If, instead of driving the carriage with his own hands he employs his servant to drive it, the servant is but an instrument set in motion by the master.   It was the master's will that the servant should drive, and whatever the servant does in order to give effect to his master's will may be treated by others as the act of the master, '*Qui facit per alium facit per se,*' the general rule being that 'a master is responsible for all acts done by his servant in the course of his employment, though without particular direction,' even whilst engaged in private business of his own, provided he be at the time engaged generally on that of his master.   The tests applicable for determining the liability of the master being: Is the servant 'in the employ of his master at the time of committing the grievance?'— was he authorized by his master to do the act complained of?   'The master,' observes Maule, J., 'is liable even though the servant in the performance of his duty is guilty of a deviation or a failure to perform it in the strictest and most convenient manner.''   (Broom's Legal Maxims, 846.)

It is clear that the view taken by the trial court was entirely too narrow.   But did the pleadings confine him to this view alone?   I think not.   Although it is alleged in the second paragraph of the complaint that the defendant is the owner of an establishment or enterprise or line of automobiles which made daily trips between San Germán and Mayagüez, yet in the fourth paragraph a sufficient allegation is set out to declare the liability of the defendant even if the allegation in regard to the establishment or enterprise or line contained in the second paragraph should be eliminated or may not have been proven.   Then it was not proper for the trial court to base its decision on this point alone, as was done in this case. This court should not follow the trial court in thus excluding from consideration an allegation of the complaint.

Before proceeding further in an examination of the record it is probably well to examine the position taken by the learned and distinguished counsel for the respondent and in which he was closely followed by the trial court and the majority of the appellate court.

It is claimed by the respondent herein that this case should be decided solely on sections 1803 and 1804 of the Civil Code of Porto Rico, which are copied from the Spanish Civil Code, sections 1902 and 1903, and which read as follows:

"Section 1803.—A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done.

"Section 1804.—The obligation imposed by the preceding section is demandable not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

"The father, and on his death or incapacity the mother, is liable for the damages caused by the minors who live with them.

"Guardians are liable for the damages caused by minors or incapacitated persons who are under their authority and live with them.

"Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employes in the service of the branches in which the latter may be employed on account of their duties.

"The State is liable in this sense when it acts through a special agent but not when the damage should have been caused by the official to whom properly it pertained to do the act performed, in which case the provisions of the preceding section shall be applicable.

"Finally, masters or directors of arts and trades are liable for the damages caused by their pupils or apprentices while they are under their custody.

"The liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage."

It is unnecessary to quote from the Organic Act of Porto Rico to show that these sections are still in force in this Island. This clearly appears from sections 8 and 32 of that act of Congress, and this case turns on the construction of the sections quoted from our Civil Code. It is sought to so interpret these statutes as to give a negative answer to the question: "Is the owner of an automobile which is not engaged in the business of a line but in the particular service of its owner liable for the fault or negligence of his employe?" The res-

pondent rests his whole case on this proposition, and in this negative reply he is sustained by the majority of this court. Of course these sections must be construed like other statutes in accordance with the well-known rules established in such cases, which, in order to arrive at a correct conclusion, must be examined more or less carefully. Canons of construction are universal and apply to all written instruments. They affect all statutes, by whatever congress, cortes, parliament, or legislature they may be passed. They are founded on pure reason, like mathematics, and are applied according to the inexorable principles of sound logic. The sections quoted are part of Chapter II of Title XVI. This title treats of "Obligations contracted without agreement"—that is to say, of 'of "Torts." The chapter more specifically relates to "Obligations which arise from fault or negligence." Of course, according to the well-known rule for the interpretation of statutes, in order to ascertain the legislative intent the whole statute must be considered. (1 Federal Statutes Annotated, XXVI, and cases cited.) Then let us look at section 1805, which says, "A person who pays for the damage caused by his employes may recover from the latter what he may have paid." The employer is thus put on exactly the same plane as a surety on a promissory note. He is primarily liable, but has the right of recovery over against the party for whose acts he is called upon to answer. The doctrine of *respondeat superior* is clearly recognized in this section and cannot be ignored.

The respondent claims that the text of section 1804 of the Civil Code restrains the power of courts from applying the liability of the principal to cases which are not set forth therein, and that this section of the statute limits the foregoing under the application of the maxim *Expressio unius est exclusio alterius*. Let us briefly examine the authorities in regard to that maxim and the force which should be given thereto.

In Bouvier's Law Dictionary, 353, we are given the definition of this maxim and referred to some authorities, thus:

*Expressio unius est exclusio alterius.* The expression
of one thing is the exclusion of another. Co. Litt., 210;
Broom Max., 607, 651; 3 Bingh. N. C., 85; 8 Scott N. R.,
1013; 12 M. & W., 761; 16 id., 244; 2 Curt. C. C., 365;
6 Mass, 84; 11 Cush., 328; 98 Mass., 29; 117 id., 448; 3 Johns.
Ch., 110; 5 Watts, 156; 59 Pa., 178; 84 Ala., 289; 11 Colo.,
265; 36 Fed. Rep., 880; 74 id., 535; 104 U. S., 25; 4 Biss.,
35," to which may be added Beal's Cardinal Rules of Inter-
pretation, p. 78; 1 Federal Statutes Annotated, LXIX, *et seq.*

In commenting on the maxim *Expressio unius est ex-
clusio alterius,* Dr. Broom observes that great caution is
requisite in dealing with it as it is not of universal applica-
tion, as remarked by Lord Campbell in the case of *Saunders
v. Evans* (8 H. L. Cases, 729), but it depends upon the inten-
tion of the maker as discoverable from the face of the instru-
ment. (Broom's Legal Maxims, 653.) The same author con-
tinues to say that thus it sometimes happens that in a statute
the language of which may fairly comprehend many different
cases, some only are expressly mentioned by way of example
merely and not as excluding others of a similar nature; and in
such cases this ordinary rule cannot apply. (Idem, 664.) And
he further remarks that law axioms are nothing more than
the conclusions of common sense which have been formed and
approved by the wisdom of ages. (Idem, 666.)

In discussing this maxim Mr. Edward Beal, an eminent
English author, says that the method of construction sum-
marized therein is one that certainly requires to be watched;
and he agrees with the courts in remarking that "It is often
a valuable servant but a dangerous master to follow in the
construction of statutes or documents. The *exclusio* is often
the result of inadvertence or accident, and the maxim ought
not to be applied when its application, having regard to the
subject matter to which it is to be applied, leads to inconsis-
tency or injustice." (Citing *Lowe* v. *Darling & Son,* 2 K. B.,
784. See Beal's Cardinal Rules of Legal Interpretation, pp.
78 and 79.)

In commenting on the maxim *Expressio unius est exclusio alterius*, as applied to the construction of statutes it has been wisely held by the Federal courts that where a statute lays down a general rule, expressly or by proper construction, and proceeds to specify instances, the latter may be regarded as illustrative rather than exhaustive, and the maxim does not apply. (*Int. Com. Com.* v. *Balt. & Ohio R. R. Co.*, 43 Fed. Rep., 58 and 59.) But as far as section 1804 of our Civil Code is concerned this can be seen from a mere reading of the statute itself. All the instances enumerated in the latter section are contained in the general terms employed in the former one, but they could not reasonably be held to be a complete list of such cases.

Moreover, in thus strictly applying the maxim *Expressio unius est exclusio alterius* the respondent asks us to disregard other more important rules of interpretation and to disregard the intent of the Legislature as expressed in the Civil Code itself.

The authorities agree that in the construction of any statute that exposition ought to be adopted which effects the true intent and real object of the Legislature in its enactment. (*Minor* v. *Mechanics' Bank* [1 Peters], 26 U. S., 84.) And further that courts always prefer that interpretation of a statute which would further the object of the legislation in preference to a construction based on purely artificial rules. (*Budd* v. *Budd,* 59 Fed. Rep., 741.) And besides that an interpretation of a statute which defeats any of its manifest purposes cannot be accepted. (*Erhardt* v. *Schroeder,* 155 U. S., 134; *Lan Ow Bew* v. *United States,* 144 U. S., 56; *Kansas, etc. R. R. Co.* v. *Atty. Gen.,* 118 U. S., 694; opinion of Judge Taft; 20 Opns. Atty. Gen. U. S., 167.)

Now it is to be presumed that the Spanish Legislature in the enactment of the Civil Code, and our own in adopting and modifying it, had in view and intended to provide just rules for ascertaining and enforcing obligations between parties, whether arising without agreement, as in case of torts, Title

XVI, or otherwise; and in the second chapter of said Title XVI it was the legislative intent to provide for all cases of obligations which arise from fault or negligence as is expressed in its title. Then can it be presumed that it was the intention of the lawgiver to make an owner of animals responsible for the damages done by them and at the same time to relieve him of all liability for the tortious acts of his carriage driver or chauffeur when acting in his service and under his orders? Or could a wise legislator have intended that the owner of an automobile who made a regular business of carrying freight and passengers between two towns in a line of vehicles should be responsible for the faults or negligence of his chauffeurs conducting these cars, but should be exempt from all liability for exactly similar acts committed by his chauffeur who drove the car devoted solely to his personal use and enjoyment? Can courts presume that a legislature would be so foolish and so unjust? No construction of a statute should be adopted which leads to an absurdity. One of the primary canons of construction requires that all statutes should be given a reasonable interpretation and not one for which no sufficient reason can be assigned. (*Chesapeake & Ohio R. R. Co.* v. *Miller*, 114 U. S., 187.) Surely every law should be interpreted according to the legislative intent as fairly deducible from the language employed. (*United States* v. *Goldenburg*, 168 U. S., 102; *United States* v. *Fisher*, 109 U. S., 145; United *States* v. *Hogg*, 111 Fed. Rep., 294; 1 Federal Statutes Annotated, XXIV and XXV.)

It is further argued that the liability of the wrongdoer under sections 1803 and 1804 participates in the nature of a punishment. This is clearly erroneous, as a mere reading of the statute, especially in the light of American jurisprudence, will show that the remedy is compensation for the wrongs suffered and nothing more. It is curiously contended that the sections of the Civil Code cited enumerate all the cases in which liability arises for the acts or omissions of a third person, and because automobiles are not mentioned cases like

the one at bar are excluded unless used in a line running for hire. As the statute was originally passed before automobiles were invented we can hardly expect them to be specially named in the legislative act.

And our Supreme Court has never before put so narrow a construction on the Law of Torts or on these statutes, though they have often had them under consideration. Mr. Justice del Toro in the Díaz case cited elsewhere herein says that although section 1803 of the Revised Civil Code, which is our statute now in force, is the same as article 1902 of the Spanish Civil Code, still by reason of the political change brought about in the Island and the establishment of the new penal system which omitted everything having reference to the exercise of civil actions resulting from criminal acts, the same having been formerly included therein, the provisions of said section 1803 had and still have a wider range of application and afford a basis for the exercise of civil actions arising from quasi-criminal fault and negligence. The learned justice in this opinion recognizes the well-known fact that by the change of sovereignty and the adoption of our present Penal Code and Code of Criminal Procedure the Spanish method of awarding damages for criminal faults and negligences was entirely changed and the American law in regard to torts was necessarily adopted. In this view the court agreed with the *ponente* as had previously been indicated by the opinion of the court, written by Mr. Justice Wolf, in the case of *Zalduondo* v. *Sánchez,* 15 P. R. R., 217. Since the adoption of the American system of criminal jurisprudence in 1902 the Spanish methods have been changed and the remedies for torts are now administered in accordance with American jurisprudence. The basic principles of the two systems are, however, the same, as expressed in the great works of Cooley, Sedgwick, Sutherland, and other eminent writers treating of damages and in sections 1803 and 1804 of the present Porto Rican Civil Code. (3 Opins. Atty. Gen. P. R., 600.) If the science of jurisprudence is to advance in this

Island and the administration of justice to be facilitated and improved, keeping pace with the progress of the age, it must be by endeavoring to harmonize our laws as inherited from the Peninsular with the great and enlightened system prevailing in North America. A liberal construction of our laws is imperative; progress requires it and justice demands it at the hands of our Supreme Court.

But let us pass on to an examination of the errors assigned specifically by the appellant as occurring on the trial of the cause. They are eight in number, and may be taken up *seriatim.*

The *first* error asigned relates to the exclusion of evidence. The witness, Rufino Arroyo, was asked by the plaintiff's attorney if he had ever seen any automobile on that road, running the way defendant's automobile ran, describing curves or esses from one side of the road to the other. After the answers were given by the witness the defendant's counsel moved to strike the testimony from the record, which was accordingly done. This ruling was proper, since it was not pertinent to the issue what the witness had seen done by other cars, and he had already described the manner in which the automobile of which the complaint was made was running, and this part of his testimony remained in the record.

The *second* error specified by the appellant was to the exclusion of the testimony of two witnesses, Simón Carlo and Eduardo Riera, Jr., who were offered to discredit the testimony of the plaintiff's witness, Agustín Fábregas. Of course, a party is not allowed to discredit his own witness. The appellant contends that the witness was summoned by both plaintiff and defendant, but there is nothing in the record to show this; and if there were the witness, Fábregas, was not called by the defendant and must be considered as the witness of the plaintiff. The ruling of the court on this point was correct.

The *third* error assigned is that the court refused to admit

·in evidence a letter of Dr. Lange giving to the municipal judge an account of an examination which he had made of plaintiff's wounds. This letter was contained in the record of a criminal case prosecuted against the chauffeur, Juan Gonce, for violation of the laws of public security. The letter was not sworn to, but the writer might have testified to the contents had he been present in court. Under our law of evidence, section 123, there are only three ways specified for taking the testimony of witnesses: First, by affidavit; second, by deposition; and third, by oral examination. No witness is allowed to testify by letter or without being sworn. As the evidence excluded was not authorized by the law it was properly excluded.

The *fourth* error specified by the appellant's counsel is the refusal of the trial court to permit the witness, Montalvo, who had been municipal judge, to explain the legal reason which he had for acquitting the chauffeur, Juan Gonce, of the offense charged against him of violating the law for the preservation of public health and security. The trial judge rightly ruled that he would neither admit proof on the part of the defendant that the chauffeur had been acquitted nor on the part of the plaintiff proof to explain the reason of his acquittal. The matter was entirely immaterial and impertinent to the issues involved in this civil case.

The *fifth* error assigned is not presented in such a manner as to be considered by this court, inasmuch as the trial court seems to have made no ruling in regard to the question indicated.

The *sixth* error specified is more important than any of those which precede it. It is that the trial court erred in setting forth in its opinion that the complaint was presented based on sections 1803 and 1804, paragraph 4, of the Civil Code. This was the theory maintained in the decision rendered by the district judge. And if we consider the second paragraph alone of the complaint the inference may seem justified. But we must take into consideration the whole

complaint, and if any part or paragraph of the same is stricken out or proof fails in regard thereto and there remain sufficient allegations in other parts of the complaint to justify a judgment in favor of the plaintiff, if proven by the evidence, it is error to render judgment against him because he may fail to prove a single allegation which may be regarded as superfluous. In my view of the Law of Torts, as in force in Porto Rico, the principle announced in section 1803 of the Civil Code and elaborated and illustrated by the succeeding sections is entirely in harmony with American jurisprudence. We may, therefore, look for authorities on this subject not only in the Spanish law as given to us by the great commentators and the Supreme Court at Madrid but also to the works of Cooley, Sutherland, and other eminent text writers and to the decisions of the American courts.

There is no doctrine better settled than that of *respondeat superior* or that the employer is liable for the negligence of the employe who, while engaged in his business as such, causes an injury to a third person. Every person who expects to derive an advantage from the acts of another done in his behalf must answer for all injuries which may be thereby sustained by other innocent persons. There were sufficient allegations in the complaint and the credible evidence contained in the record is sufficient to justify a verdict in favor of the plaintiff for some amount, be it ever so small, and in my opinion a judgment to the contrary was erroneous. (Broom's Legal Maxims, 843; 34 Cyc., 1673, *et seq.*)

The *seventh* error assigned is the rendition of a judgment adverse to the plaintiff on account of the insufficiency of the evidence. There can be no doubt that the plaintiff was lawfully walking along the public highway and was struck by an automobile belonging to the defendant and driven by his servant, and that he suffered wounds and bruises and was confined to the hospital for more time than three weeks. These facts could not be doubted by the trial judge. And the tes-

timony of the witness, Agustín Fábregas, whom the trial judge states to be entirely worthy of belief, is recited as follows:

"In reply to questions put by the plaintiff, he states: 'That I am a mechanic and reside in Mayagüez; that on June 19, 1910, I was in Mayagüez, but I went to San Germán to get the automobile of Llavina to repair it, and I was called by said Mr. Llavina, and made an agreement with him in regard to the reparation of the automobile, and I took under my care said automobile upon delivering it to the shops; the automobile was brought to Mayagüez under the care of Gonce, who was then Mr. Llavina's chauffeur; I do not remember his first name, but he is the son of Pablo Gonce, and is a young man; as he was conducting the machine I think he was authorized for the same by Mr. Llavina; I do not know whether Mr. Gonce was then an employe of Mr. Llavina; and upon my arrival he was not there; he was ordered to come, said Gonce coming a few minutes thereafter, who was the person to whom I spoke in regard to the reparation of the automobile; and I went to San Germán, where I was called by Mr. Llavina, Gonce being the person who brought the automobile to Mayagüez and was in charge of the same during that day. I did not make any agreement with Mr. Llavina to repair the same, as he himself did not know what was to be done.'

"In reply to questions of the defendant, he states: 'As the automobile was in bad condition, I was proceeding with my automobile at a distance of one kilometer so as to prevent any accident on the road. The automobile of Llavina was in very poor condition, and was running to Mayagüez having the differential broken and without any engine-cover or body; without any top, as it had no body, and the chassis was with the machine; it had no cushions and was 30 horsepower and 4-cylinder, and it developed very little speed; while I was behind the same on the road it never reached a speed of 12 kilometers, and it took us an hour to go from San Germán to Mayagüez; the chauffeur seemed to be in normal condition; he was not intoxicated; while I saw him he was properly conducting the machine and blew the horn at curves of the road whenever a person approached the same; I heard the horn whenever I was at a distance of half a kilometer.'

"Replying to the questions put by the judge, he said: 'The automobile was in very poor condition due to the fact that the mechanism furnishing motion to the wheels was broken; however, it could run, but the same would have become disabled on the road if an effort

had been made to proceed at a speed of four or five miles; the engine was in good condition and the automobile could be operated properly, there being no risk that the same would have become uncontrollable by the chauffeur; it could be controlled, and as to this matter it was in perfect condition.'

"Replying to question of the plaintiff, he states: 'I stated that said automobile had made a trip from San Germán to Mayagüez in one hour, said distance being of 15 miles or 20 kilometers, the same making the trip in one hour notwithstanding the fact of its poor condition. It first started from San Germán and I was on the watch until the same reached the farm "Estebanía"; there I lost sight of it, as I was compelled to make a stop to fix a screw in my automobile, and saw it no more until the accident occurred, for which reason I am unable to state what the automobile was doing on the road. The farm "Estebanía" is at a great distance from the place where the accident occurred, and it is located probably at kilometer 5 or 5½, the accident having occurred, I think, before the first kilometer; I did not see Gonce while I was running through said five kilometers, and upon my arrival at the hill of Las Piedras the accident had already taken place.'

"In replying to questions of the defendant, he states: 'The automobile was coming from San Germán to the farm "Estebanía" at a speed of about 12 kilometers, and perhaps at a greater speed at straight points; the conductor always took his right side and observed all the rules of locomotion; from the farm "Estebanía" ahead he was coming at a less rate of speed than before on the curves; I cannot state at about what distance my automobile was from the other when the accident occurred, because I do not know when it occurred, as I stopped for nearly two minutes in the plantation "Estebanía," finding the automobile stopped on the right side of the road when I proceeded; there I found Mr. Andrés Méndez, together with other gentlemen; and the latter, I think (pointing to the plaintiff), had been struck by the automobile; I took him to the emergency hospital, and was at the left side of the person conducting the automobile, which was furnished with a mudguard, the mudguard at the left side showing some scratches which did not appear in that on the right.'

"Replying to questions put by the judge, he states: 'That he often travels from Mayagüez to San Germán in automobile and usually makes the trip in about half an hour or 35 minutes; and it took him such time going at the rate of speed allowed by the law; but if it is desired, the trip can be made in three quarters of an hour;

but ordinarily, going at a speed of 20 miles, it takes about the same time.'

"Replying to questions put by the plaintiff, he states: 'When I arrived at the place where the accident occurred I took charge of the injured person, and the collision had already taken place; Juan Gonce was there, and Pastor Vélez was held between two men who were at the left side of the person conducting the automobile; but the accident took place on the right side of the road coming from San, Germán to Mayagüez.'

"In reply to questions put by the defendant, he states: 'The automobile was on the right side of the road, but Pastor Vélez was on the road and at the left side of the person who conducted the automobile; the right wheels of the automobile were at a place corresponding to the gutter; the automobile was thrown down upon the gutter, Pastor Vélez being on the left side.' "

Such was the testimony.

The proof given and received as credible then was sufficient under the jurisprudence of Porto Rico, derived from both Spanish and American sources, to justify a judgment in favor of the plaintiff for some amount; and such a one, in my view of the case, should have been rendered.

The *eighth* specification of error relates to the refusal of a new trial for which the plaintiff moved in due time and supported his motion by affidavits. The grounds for new trial alleged are:

First. Accident or surprise which ordinary prudence would be unable to foresee.

Second. Newly discovered evidence which is important to the mover.

Third. Insufficiency of the evidence to justify the judgment or decision, or that it was contrary to law.

Fourth. Error of law occurring at the trial and to which exception was taken at the trial by the mover. .

These several grounds of the motion made for new trial are based on section 221 of our Code of Civil Procedure, which, in so far as relied on, reads as follows:

"Section 221.—The former judgment or other decision may be vacated and a new trial granted, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party:

"1. *  *  *.

"2. Accident or surprise which ordinary prudence could not have guarded against.

"3. Newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial  *  *  *.

"4. *  *  *.

"5. Insufficiency of the evidence to justify the judgment or other decision, or that it is against law.

"6. Error in law occurring at the trial and excepted to by the party making the application."

The first ground of this motion is based on the absence of Dr. Lange in the United States. The affidavit of the attorney for the plaintiff, José Ramón Freyre, Esq., states that he was informed of the absence from the Island of the witness on the day previous to the trial. Such being the case he should have applied for a continuance and set forth his surprise as a basis for such an order; and he should not have taken the chances of a trial and then resorted to a motion for a new trial to avoid the consequence of an adverse decision. The affidavit does not disclose such an accident or surprise as is contemplated by the statute.

In regard to the newly discovered evidence on which the motion is based and the affidavits of Carlo and Riera supporting the claim, I must say that they are insufficient. No diligence is shown on the part of the plaintiff to secure this evidence before the trial; and, besides, the record shows that both these witnesses were present in court and were offered by the plaintiff to prove other facts which he considered essential to his case and were rejected. Their testimony on the points covered by their affidavits was not offered, nor is there anything to show that plaintiff did not then know that they could then testify on that point; nor is it even shown

that they were interrogated in regard thereto. A total lack
of diligence appears where it should be affirmatively shown
to have been used.

"The affidavits must show that the party used reasonable diligence
to discover and produce the evidence at the former trial." (*Stoakes*
v. *Monroe*, 36 Cal., 388.)

"There must not merely be an allegation but proof of diligence
to discover the evidence and produce it at the trial." (*Jacks* v.
*Cooke*, 6 Cal., 165; *Weimer* v. *Lowery*, 11 Cal., 113; *Klockenbaum* v.
*Pierson*, 22 Cal., 164; *People* v. *Miller*, 33 Cal., 102; *Jones* v. *Jones*,
38 Cal., 585; *Butler* v. *Vassault*, 40 Cal., 76; *Jones* v. *Singleton*, 45
Cal., 92; *Moran* v. *Abbey*, 63 Cal., 56.) That diligence must have
been used, see *Von Glahn* v. *Brennan*, 81 Cal., 261; *People* v. *Ching*
*Ring Chang*, 74 Cal., 389; *Ross* v. *Sedgwick*, 69 Cal., 247; *People* v.
*Sutton*, 73 Cal., 243; *People* v. *Howard*, 74 Cal., 547; *People* v.
*Urquidas*, 96 Cal., 239; *Heintz* v. *Cooper*, 104 Cal., 668; *Oberlander*
v. *Fixe & Co.*, 129 Cal., 690; also from our own court, *People* v.
*Goitía*, 5 P. R. R., 249; *People* v. *Milán*, 7 P. R. R., 444; *People* v.
*Díaz*, 5 P. R. R., 415.

As regards the insufficiency of the evidence to justify a
judgment against the plaintiff, I merely have to say that a
simple lack of evidence to prove the material allegations
of the complaint is sufficient to justify a judgment for the
defendant. As far as contributory negligence on the part
of the plaintiff is concerned, it was neither alleged as a de-
fense nor attempted to be proven. The burden of proving
sufficient facts to make out his case is always on the plain-
tiff and the defendant need offer no proof until this is done.
In this case it seems that the defendant relied on the failure
of proof on the part of the plaintiff, and in this view he
was sustained by the trial court. (Porto Rican Law of Ev.,
sec. 108.)

But we should further inquire: Was the judgment con-
trary to the law? as is set forth in the last clause of the
third paragraph of the motion.

As heretofore expressed, I think the judgment is liable

to this objection and a new trial should have been granted on this ground.

As contended by the attorney for the plaintiff, the last paragraph of section 1804 of the Civil Code provides the following defense against negligence alleged and proven under the said section, to wit:

"The liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage."

This defense is not sustained by the evidence, and no attempt is made to sustain such a proposition. There is nothing in the law, however, to show that this was intended to be the only defense which could be presented in actions for tort. The plaintiff then derives no benefit from this point.

But sufficient facts were alleged and proven by a preponderance of the credible evidence adduced on the trial to support a judgment in favor of the plaintiff, if not for the amount claimed, for some substantial amount, which, in my opinion, should have been ascertained and fixed by the court.

The last ground alleged for granting a new trial is that the court on the trial committed various errors of law as shown by a great array of authorities from the American jurisprudence. The respondent's counsel is content to answer these by saying that these are good in the States where they are announced but have no application in Porto Rico, where we are governed by our own statutes, and that this case turns on sections 1803 and 1804 of the Civil Code, without considering the laws or decisions of other States. In this view counsel is sustained by the opinion of a majority of this court.

This is not my view of the Law of Torts as heretofore administered by the courts of this Island. We have formerly constantly and consistently appealed to the American law in deciding cases of tort. I believe that our course in so

doing is justified by sound legal principles and may refer generally to many similar cases in which we have cited authorities from the American continent, as follows: *Moreno v. Martínez,* 14 P. R. R., 379; *Vargas v. Monroig,* 15 P. R. R., 27; *Pérez v. Yabucoa Sugar Co.,* 15 P. R. R., 201; *Zalduondo v. Sánchez,* 15 P. R. R., 217.; *Marrero v. López,* 15 P. R. R., 746; *Díaz v. San Juan Light & Transit Co.,* 17 P. R. R., 64, and many others easily found. In the case of *Díaz v. San Juan Light & Transit Co.,* just cited, Mr. Justice del Tóro, who wrote the opinion, discusses at length the question of torts, and especially the application of sections 1803 and 1804 of our Civil Code. He treats of the law as it stood in cases of personal injury in Spanish times and since the change of sovereignty, quoting numerous Spanish and American authorities and showing that under our present system we must from necessity follow American jurisprudence, though the underlying principles of both systems are the same. In that case a full discussion of the sections cited from our Civil Code is elaborated and the opinion plainly sets forth in what cases a recovery can be had under our statutes for personal injuries. In the decision of the case at bar we should have been guided by the opinion in the Díaz case.

The plaintiff's counsel in the trial court does not seem to think, nor do I, as a matter of law, that in order to establish the civil responsibility of the defendant the fact that he was the owner of an automobile line must be proven. It is enough to have shown at the trial that the automobile which caused the injury belonged to him; that the same was being conducted by the chauffeur or employe of the defendant while said chauffeur was acting under the orders of the automobile's owner, as he was then bringing said automobile to the shop of the mechanic, Agustín Fábregas, to be repaired by virtue of the agreement made between the said mechanic and the owner of the automobile, and that the chauffeur in charge was conducting the vehicle on the public

road in a negligent manner, in open disregard of the property and the life of any person passing along the road, the plaintiff not having contributed to said injury.

The American decisions are upheld by those of other countries also. It has been held by a Canadian court "that when any loss or damage is incurred or sustained by any person by means of a motor vehicle on a public highway the onus of proof that such loss or damage did not arise through the negligence or improper conduct of the owner or driver of the motor vehicle should be upon the owner or driver of such vehicle." Quotation in the case of *Mattei* v. *Gillies*, Ontario Divisional Court, April 23, 1908; 16 Ont. L. Rep., 558.

The same court continues, saying: "Where in an action against the owner of an automobile to recover for injuries inflicted upon the plaintiff by being struck by the machine it appears that the defendant's chauffeur received permission to use his master's car for a few minutes to take some things to the house of a fellow-servant, and at the request of the daughters of the latter took them for a ride, and in doing so struck and injured the plaintiff, a finding by the jury that the chauffeur was acting within the general scope of his employment at the time of the accident and that the defendant has not proved that the accident did not happen through the chauffeur's negligence is sufficiently supported by the evidence, in view of a statute regulating the speed and operation of motor vehicles making the owner liable for any violation of the act, and casting on him the burden of relieving himself of liability for an accident occasioned by the machine." Idem. It seems that this decision casting the burden of proof on the owner of the car causing the injuries was made under a special statute thus far changing the general rule that it is incumbent on the plaintiff to prove his entire case. But that matter does not alter the general principle of *respondeat superior,* which is sustained in the decision of the Canadian court.

It has been further held also by a Canadian court that the owner is liable for the negligence of the driver of a motor car who, though not in the owner's employ, is under his control. (*Perkins* v. *Stead,* 23 Times L. Rep., 433.) These Canadian cases are cited at second hand, the original reports not being accessible in this Island.

In a number of recent American cases owners of automobiles have been held liable for the negligent acts of their chauffeurs or agents, although in these cases it was not disputed that the chauffeurs or agents were acting within the scope of their employment. (*New York Transp. Co.* v, *Garsido,* 157 Fed. Rep., 621, 85 C. C. A., 285; *Campbell* v. *Drchor* [Ky., 1908], 110 S. W. Rep., 355; *Seaman* v. *Mott* [Sup. Ct. App. Div.], 110 N. Y. Supp., 1040; *Rochester* v. *Bull,* 78 S. Car., 249, 58 S. E. Rep., 766; *Ottomeier* v. *Hornburg* [Wash., 1908], 97 Pac. Rep., 235. See also *Strand* v. *Grinnel Automobile Garage Co.* [Iowa, 1907], 113 N. W. Rep., 488.)

In *Cunningham* v. *Castle* (Supm. Ct. App. Div.), 111 N. Y. Supp., 1057, which was a case very similar to the one at bar, it was said: "If an accident should occur while the chauffeur was taking the automobile from the garage to the machine shop for repairs the owner's want of knowledge would not affect his liability, because the act of the chauffeur would be in the prosecution of the master's business and within the scope of the chauffeur's employment."

In an action to recover damages for being run down by an automobile alleged to have been operated by the defendant's chauffeur it was held that proof to the effect that the defendant was the owner of the machine and that the chauffeur was in his employ to operate it was sufficient to make out a *prima facie* case showing that the chauffeur was acting within the scope of his employment at the time. (*Stewart* v. *Baruch,* 103 N. Y. App. Div., 577; 93 N. Y. Supp., 161.)

In another New York case the court said: "That the automobile was proceeding at a rate of from three to five miles an hour appears substantially without dispute, and

since the operator of the automobile from his position must have had a clear view ahead of him, and admittedly did have, the only fair inference from the fact of the collision is that he either recklessly or negligently persisted in his course. Ordinary prudence would certainly have required him either to halt or to deviate from his course into the open space on his right, in which event the collision would have been avoided." (*Caesar* v. *Fifth Av. Coach Co.*, 45 Miscl. N. Y. Rep., 331.) This is very similar to the present case.

In the case of *Hennessey* v. *Taylor*, decided by the Massachusetts Supreme Judicial Court on December 4, 1905, reported in 189 Mass., 583, it was said that: "A pedestrian, when lawfully using the public ways, is not required to be continuously looking or listening to ascertain whether autocars are approaching, under the penalty on failure to do so of being presumed negligent if he is injured." In other words, pedestrians have some rights in Massachusetts which chauffeurs are required to respect. Have they not in this Island?

The courts have gone further in cases of this sort. In a number of decisions the right to recover damages for bodily pain and suffering resulting solely from fright due to a negligent act has been upheld. It has been held, however, that as in other negligent cases the injury must be the proximate result of the negligent act. (*Lehigh, etc., Ry. Co.* v. *Marchant*, 84 Fed. Rep., 870, 55 U. S. App., 427, 28 C. C. A., 544; *Hailes Curator* v. *Texas, etc., Ry. Co.*, 60 Fed. Rep., 557; 23 U. S. App., 80; 9 C. C. A., 134; 23 L. R. A., 774. See also *Sloane* v. *Southern California R. Co.*, 111 Cal., 668; 44 Pac. Rep., 320, 32 L. R. A., 193.)

Courts have sometimes commented on the philosophy of physical injuries, as follows:

"The mind and body operate reciprocally on each other. Physical injury or illness sometimes causes mental disease. A mental shock or disturbance sometimes causes injury and illness of body, especially of the nervous system. Now, if

the fright was the natural consequence of and was brought about or caused by the circumstance of peril and alarm in which defendant's negligence placed plaintiff, and the fright caused the nervous shock and convulsions and consequent illness, the negligence was the proximate cause of those injuries." See *Purcell* v. *St. Paul City R. Co.,* 48 Minn., 134, 50 N. W. Rep., 1038, 16 L. R. A., 203, which is one of the leading cases supporting the right of the plaintiff under circumstances like the present to recover, wherein the court used the words above quoted. The Supreme Court of California is clearly in line on this question. It says:

"Physical pain has always been considered an element of damages for which compensation should be allowed." (*Malone* v. *Hawley,* 46 Cal., 409; *Fairchild* v. *California Stage Co.,* 13 Cal., 599.) "Mental suffering accompanying personal injury or physical pain is always the subject of compensation." (*Malone* v. *Hawley,* 46 Cal., 409; *Jones* v. *The Steamship "Cortez,"* 17 Cal., 487; 79 Am. Dec., 142.) As a general rule injuries from fright accompanying a physical injury furnish a basis for the recovery of damages. (*Masters* v. *Warren,* 27 Conn., 293; *Seger* v. *Barkhamsted,* 22 Conn., 290.) Though the question of mental anguish was not enlarged on in this case, these decisions are used to show that the view of the trial court was entirely too narrow.

In estimating damages the plaintiff is entitled to recover for the reasonable amount of time that may have been lost by him in consequence of the injury complained of. The extent and nature of the business or employment of the plaintiff and of his physical capacity to perform the work at the time he was injured may be shown. (*Jordan* v. *Middlesex R. R. Co.,* 138 Mass., 425; *Wade* v. *Lercy,* 20 How., 34, 15 L. Ed., 813; *Saldaña* v. *Galveston, etc., Ry. Co.,* 43 Fed., 862.)

Some of the courts have laid down the broad doctrine that a principal is liable in *exemplary* damages for the acts of his agents, however tortious or unauthorized, where they

are performed in the course of his regular business, on the
ground that the principal is liable for all acts so done by
his agent; and this, too, whether such acts are previously
authorized or subsequently ratified by the principal. (*Men-
dlesohn* v. *Anaheim Lighter Co.*, 40 Cal., 657; *Wardrobe* v.
*California Stage Co.*, 7 Cal., 118; 68 Am. Dec. 231.) But the
question of exemplary damages was not presented in the case
before us now.

If the injury occurred while the car was being operated
by a chauffeur in the course of his employment the owner
is held to be liable although the chauffeur's act was not nec-
essary to the performance of his duties. Likewise, accord-
ing to the cases decided, the owner is liable if the chauffeur
was acting within the course of his employment, although he
was driving without the knowledge or consent of the owner,
or in a way that was not expected, or even in disobedience
of instructions. The rule of *respondeat superior* has been
stated as follows: ''The employer is liable for all injuries
to person or property caused by the negligence of his em-
ploye if the act which results in the injury is done while
the employe is acting within the scope of his employment
in the employer's service, though the act was not necessary
to the performance of the employe's duties, and it was not
expressly authorized by the employer or known to him.''
''The Law of Motor Vehicles,'' by Berkeley Davids, of the
District of Columbia Bar, a recent work published by Edward
Thompson Company, Northport, Long Island, N. Y., 1911. If
the chauffeur was doing what he was employed to do at the
time of the injury, the fact that he was not doing it in the
way expected is immaterial. (*Danforth* v. *Fisher*, 75 N. H.,
111; 71 Atl., 535; 21 L. R. A. [N. S.], 93.)

To give the statute the construction demanded by coun-
sel for the respondent leads to a result so manifestly unjust
that it has been suggested that there is a defect in the law
which the legislature should remedy. During the 14 years
since the change of sovereignty in this Island this defect

has never before been discovered. It is true that a defect exists and has been in effect since the decision of this court on yesterday. It is now necessary to correct this fault in the law by legislative action. In my humble judgment, a proper construction of the statutes which we already have on our books would have left this entirely unnecessary.

I cannot agree to brush aside all the accumulated wisdom embodied in the decisions of our American courts and fall back entirely upon the Civil Code and the comments made thereon by the courts of a foreign country, as we are invited to do by the respondent. I think that in matters of this kind the American jurisprudence on matters of negligence is entirely applicable. I hold the opinion, however humble it may be, that it is not necessary in order to establish the liability for damages in a civil action to show that the defendant is the owner of an automobile enterprise or line of vehicles; it is enough to show that he is the owner of the automobile causing the injury. In the case at bar the defendant admitted through his attorney that the automobile which caused the injuries to the plaintiff belonged to Mr. Llavina and was conducted by his chauffeur, Juan Gonce.

I think that the following remarks made many years ago by this court should be applied to this case, to wit:

"We are always inclined to adduce the doctrines of American jurisprudence when applicable to judicial problems in the courts of this Island, considering them as more progressive and as an evolution of the old system." (Concurrent opinion of Mr. Associate Justice Sulzbacher, in the case of *Luis Chevremont et al.,* plaintiffs and respondents, v. *The People of Porto Rico,* defendant and appellant, judgment rendered on January 23, 1903, 1 Castro, 445.)

And I insist on this practice being followed here in view of the opinion of the Supreme Court of Porto Rico dated January 15, 1909, in the case of *Francisco Vargas* v. *A. Monroig & Sons,* in which opinion, written by Mr. Justice Wolf, the following doctrine, taken wholly from American sources, is announced:

"In cases where a defendant has not presented his evidence and there is no contributory negligence on the part of the plaintiff, the latter, provided he establishes the facts, is *prima facie* entitled to recover his actual damages. There are many cases which decide that although a complainant might by the exercise of caution have avoided the accident, yet he may, nevertheless, recover if it be shown that the defendant might have avoided the accident by exercise of proper care. If a person does a certain thing in the ordinary, usual, or convenient manner, and there is no reason whatever to fear any danger, he is not guilty of contributory negligence if by so doing he suffers an accident. The immediate cause of the accident, and not the remote cause, is to be taken into consideration." (*Vargas v. Monroig*, 15 P. R. R., 27.)

This American doctrine, which was announced by this Supreme Court in the case already cited, is sometimes called in the United States the *last chance doctrine*, in regard to which some decisions have been cited in several States in a work recently published, as mentioned above, entitled the "Law of Motor Vehicles."

As far as I am aware there is no such decision to be found in the Spanish reports. If the American authorities were sufficient in that case and dozens of others, why should they be rejected in this case at bar?

The state of American jurisprudence on this subject has been thus discussed at length because it is uniform, clear, and well established. It is also strictly in accordance with reason, and there is nothing that I can see in the Spanish authorities opposed to the American doctrine. It is only by making an exceedingly narrow construction of section 1804 of our Civil Code, adopted from the Spanish, that the doctrine of *respondeat superior* can be eliminated from the law in this Island. I cannot give my approval to such an elimination on such insufficient grounds.

Then, in accordance with the statute of March 12, 1903, transforming this court from a court of cassation to a court of appeals, and in furtherance of law and justice I believe it to be the solemn duty of this court to grant a new trial

in this cause and remand the same to the court below to be tried again, in accordance with the legal principles announced herein. The judgment should accordingly have been reversed and a new trial granted.