| | |
|---|---|
| 36 | 383 |
| 90 | 379 |
| 36 | 383 |
| 92 | 208 |

</div>

## B. F. STOAKES et als. v. W. A. MONROE et als.

EVIDENCE AS TO BOUNDARY OF MINING CLAIM.—In an action to recover damages for a trespass upon the plaintiffs' mining claims, where the defendants own adjoining claims lying west of the plaintiffs' ground, and both parties agree as to the north line of the plaintiffs' claims, and admit that their east and west lines are parallel, but disagree as to their location, and W. & Co. own claims adjoin-

ing and east of plaintiffs, and H. & Co. own claims adjoining and east of W. & Co., evidence of the location of the west line of H. & Co. is not pertinent, unless the east and west lines of W. & Co. are parallel, and the east line of W. & Co. is coincident with the west line of H. & Co.

NEW TRIAL ON GROUND OF NEWLY DISCOVERED EVIDENCE.—To entitle a party to a new trial on the ground of newly discovered evidence, it must appear that he used reasonable diligence to discover and produce the evidence on a former trial, and that his failure to do so was not the result of his own *laches ;* that the newly discovered evidence is not simply cumulative, that it is not to impeach an adverse witness, that it is material, and is so important that it would probably have changed the verdict had it been in on the former trial.

CUMULATIVE EVIDENCE.—Evidence is cumulative if it supports evidence introduced on the trial to prove facts of secondary importance, the tendency of which was to prove the facts in issue.

APPEAL from the District Court, Fourteenth Judicial District, Nevada County.

The plaintiffs recovered judgment in the Court below, and the defendants appealed from an order denying a new trial.

The other facts are stated in the opinion of the Court.

*John R. McConnell,* for Appellants.

The defendants were not, as a matter of fact, guilty of *laches* in not being prepared at the trial to rebut the plaintiffs' evidence as to the situation of the Minnesota lines.

The Court will remember that the Webb & Co., or Webb and Smalley, ground lies between the North Star (plaintiffs') claims and the Minnesota, and that it was located before the North Star.

Now, in accordance with the ordinary presumption of conformity of lines between older and more recent locations, it might be fairly inferred that the locators of the North Star had been exclusively governed, in fixing their lines, by the lines of the older and immediately adjoining claims of Webb & Co. Indeed, no other inference was possible under the circumstances, for it would be absurd to suppose the locators of a mine would, in defining their lines, neglect the claims which were immediately contiguous to their own, and be controlled by others which were not adjoining nor coterminous with their own.

All, then, that the defendants could fairly be required to foresee and provide for, was the exact position of the boundary lines of the Webb and Smalley ground, which they must necessarily have supposed had governed the location of the next adjoining North Star ground.

If they are required to anticipate the evidence respecting the Minnesota ground, why not go still further to the east, and require them to be fully prepared at the trial to show the lines of the Harmony Company? Nay, why stop at the Harmony lines? Why not go back indefinitely, to the very first location of all, and require the defendants to be fully posted as to its lines and boundaries?

*A. A. Sargent,* for Respondents.

The newly discovered evidence is merely impeaching evidence, and is cumulative. (*Aldrich* v. *Palmer,* 24 Cal. 515; *Spencer* v. *Doane,* 23 Cal. 420; *Bartlett* v. *Hogdon,* 3 Cal. 57; *Brooks* v. *Lyon,* 3 Cal. 114; *Burritt* v. *Gibson,* 3 Cal. 399; *Gaven* v. *Dopman,* 5 Cal. 342; *Taylor* v. *California Stage Company,* 6 Cal. 250; *Live Yankee Company* v. *Oregon Company,* 7 Cal. 42.)

By the Court, CROCKETT, J.:

The plaintiffs are the owners in possession of a mining claim known as the "North Star," and the defendants are the owners in possession of a contiguous claim, known as the claim of "Lott & Co." or "Lott, Ganett & Co." The action is for damages for an alleged encroachment upon and injury to the plaintiffs' mining ground by the defendants, and for a perpetual injunction to prevent future encroachments. The answer denies that the plaintiffs are the owners or in possession of the *locus in quo,* and avers title in the defendants. The plaintiffs' location was prior to the defendants', and its regularity is not questioned; but its boundaries,

49

except on the north, are disputed, and the contest relates only to boundaries. On the trial the verdict and judgment were for the plaintiffs, and the defendants moved for a new trial, chiefly on the ground of newly discovered evidence. The motion was denied, and the defendants have appealed. The reversal of the judgment is urged on the sole ground that the Court erred in denying the motion for new trial.

The northerly line of the plaintiffs' claim is not disputed, nor that it is bounded on its easterly and westerly sides by lines nearly or entirely parallel to each other. But the contest is as to the precise location of these lines, the plaintiffs maintaining that, taking the northern line as a base, the lateral lines, according to their true location, include a large portion of the mining ground claimed by the defendants; whilst the defendants insist that the proper location of these latter lines is further toward the east; and if so located, they would include only a narrow strip off the easterly side of the defendants' ground.

On the trial it appeared that next easterly of the plaintiffs' claim is located the claim of Webb & Co., or, as it is sometimes called, of Smalley & Co., and next easterly of this is the Minnesota or Halpin claim. The Minnesota was first located, then Webb & Co., then the North Star, (the plaintiffs' claim,) and lastly the defendants' claim. On the trial, testimony was introduced by the plaintiffs, tending to show the location of the westerly line of the Minnesota claim, and rebutting testimony was put in by the defendants, tending to prove that this line was further towards the east than claimed by the plaintiffs. The testimony as to the location of this line was conflicting—Halpin, a witness for the plaintiff, and one of the original locators of the Minnesota claim, testifying positively to the location as claimed by the plaintiffs; whilst Webb, a witness for the defendants, and one of the locators of the claim of Webb & Co., testified as positively to the location as claimed by the defendants. We do not perceive how the location of this line was in any respect pertinent to the issue, or could cut any figure in the case,

unless it be on the theory that the claim of the plaintiffs was bounded on the east by the claim of Webb & Co., and that the east and west lines of the last named company were parallel with each other, and that the east line thereof was coincident with the west line of the Minnesota claim. Assuming these to be the facts, proof of the correct location of the west line of the Minnesota claim would establish the proper location of the east line of the plaintiffs' claim, and we infer it was upon this theory that proofs were offered on both sides as to the proper location of this line.

On the motion for new trial, several affidavits were relied upon by the defendants to establish the fact that since the trial they had discovered for the first time conclusive evidence of the true location of the *easterly* line of the Minnesota claim, and that inasmuch as the eastarly and westerly lines of that claim were parallel, or nearly so, the newly discovered evidence fixing the easterly line would of necessity determine the true location of the westerly line; that the line, as thus ascertained, is the same line to which Webb, a witness for defendants, testified on the trial, and is a more easterly line than than deposed to by Halpin, a witness for the plaintiffs. These affidavits show that starting from the northeasterly corner of the Minnesota claim they traced the easterly line by means of marked trees, with ancient notches and blazes, partially overgrown with new wood, underneath which were letters in red paint, corresponding with the initials of the Minnesota Company; that the southerly line was partially traced in the same way; and that assuming the easterly line thus traced to be the true line, the distance from the southerly end of it to the southerly end of the western line as located by Halpin, the plaintiffs' witness, would exceed the true width of the claim by some five or six hundred feet, and the lateral lines would not be parallel, as they should be. The plaintiffs filed in rebuttal the affidavit of Halpin, the original locator of the Minnesota claim, who deposes that the easterly line, as described in the other affidavits, was not the easterly line of the claim; that he used no red paint in

defining the boundaries, and that the true line was further toward the west.   On this showing the District Court denied the motion for new trial, and the correctness of this ruling is the only question discussed in the briefs.

It is well settled that to entitle a party to a new trial on the ground of newly discovered evidence, it must appear: first—that he used reasonable diligence to discover and produce the evidence at the former trial, and that his failure to do so was in no degree the result of his own *laches;* second— that that the newly discovered evidence is not simply cumulative; third—that it is not sufficient if its only office be to impeach an adverse witness; fourth—that it must be material to the issue, and of so important a character as to satisfy the Court that it may reasonably be inferred the verdict would have been different if the newly discovered evidence had been in on the former trial.

The counsel for plaintiffs insist that the case made by the defendants is defective in each of these particulars; and on the first point, particularly, we think there is no answer to his argument.   The defendants' theory is, that all these claims were consecutively coterminous, and bounded on the east and west by lines nearly or entirely parallel with each other; and inasmuch as the Minnesota was first located, they must be presumed to have known that it was important on their theory to establish on the trial the true location of this claim.   But they contented themselves with offering evidence as to the location of the western line only, and they now propose to fortify that evidence by showing the location of the parallel eastern line, and thereby establishing the true location of the western line.   But why was not so important a fact proven on the former trial?   The northern line was well known, and there stood the line of trees, notched and blazed, with the letters in red paint, all of which could have been discovered and proved without the slightest difficulty. Any one of ordinary prudence seeking to establish the location of the western line would naturally have sought to find the parallel eastern line as a circumstance of preponderating

might.   The feeblest effort would have discovered it.   The only excuse offered for this negligence is contained in the affidavit of the defendant Monroe, in which he says: "Before said trial I knew of the existence of the Minnesota claim, but did not, of my own knowledge, know of the exact situation of the lines of such claims.   I had, however, made inquiries relative to the west line thereof, and also relative to the east and west lines of the Webb and Smalley claims, of all persons whom I supposed to be acquainted therewith.   I ascertained, as I supposed, beyond doubt, that the Webb and Smalley east and west lines ran, as the witness W. H. Webb testified at the trial; also, that the Minnesota west line ran to the stump and fallen tree mentioned by Webb.   I had never heard this fact, or the direction of the Webb and Smalley lines disputed or doubted before the trial."   He then proceeds to say that he was greatly surprised to hear at the trial, from the witness Halpin, that the west line of the Minnesota and the east line of the Webb and Smalley claims ran as testified to by that witness.   The substance of the statement is that he made no inquiry as to any of the lines of the Minnesota except the west line, and became satisfied that line was where Webb located it: that he had never heard that fact disputed or doubted before the trial, and was surprised to hear Halpin testify to the contrary.   This is not the sort of diligence required from suitors.   It will not do for them simply to satisfy themselves as to an important fact in the case, and to assume it as a conceded fact, because they never heard it disputed.   A party must be prepared to *prove* the material facts of his case, unless they are admitted in the pleadings, or by express stipulation.   If such excuses as these, for a failure to produce at the trial proofs which were within the power of the party, be tolerated, there would be no reasonable limit to applications for new trials on similar grounds.   We think no sufficient diligence was shown, and that the motion was properly denied for this reason.   It is perhaps unnecessary to discuss the other propositions involved in the motion further than to say that, if for no other reason,

we should be most reluctant to disturb the ruling of the Court below on the facts appearing in the record, not being satisfied that there is reasonable ground to believe that the newly discovered evidence would change the result on another trial.

Judgment affirmed and remittitur ordered to issue forthwith.