# STATE v. MONTGOMERY.

No. 2100. Decided June 3, 1910 (109 Pac. 815).

1. CRIMINAL LAW—NEW TRIAL—DISCRETION OF COURT. In granting or refusing motions for new trials, discretion is vested in the trial courts. (Page 517.)

2. CRIMINAL LAW—APPEAL AND ERROR. Where there is substantial evidence to support a verdict, the appellate court cannot interfere with it. (Page 517.)

3. CRIMINAL LAW—APPEAL AND ERROR—DISCRETION OF TRIAL COURT. The appellate court may not usurp the functions of the trial court in exercising their discretion on a motion for a new trial. (Page 517.)

4. CRIMINAL LAW—NEW TRIAL—NEWLY DISCOVERED EVIDENCE. On a motion for a new trial newly discovered evidence *held* cumulative, and not "so conclusive in its character as to raise a reasonable presumption that the result of a second trial would be different from the first." (Page 520.

5. CRIMINAL LAW—NEW TRIAL—NEWLY DISCOVERED EVIDENCE. In order to authorize a new trial on the ground of newly discovered evidence it must be so conclusive in its character as to raise a reasonable presumption that the result of a second trial would be different from the first. (Page 520.)

Appeal from District Court, Second District; *Hon. J. A. Howell,* Judge.

Lorenzo Montgomery was convicted of felony and he appeals.

AFFIRMED.

*J. H. DeVine* and *J. N. Kimball* for appellant.

*A. R. Barnes,* Attorney-General, for the State.

FRICK, J.

Appellant was convicted in the district court of Weber County, Utah, of the crime denounced by section 4221, Comp. Laws 1907, which reads as follows: "Any person who shall carnally and unlawfully know any female over the age of thirteen years and under the age of eighteen years shall be guilty of a felony." The female in question, hereinafter designated prosecutrix, was sixteen years of age when the sexual act complained of occurred.

The appellant, in substance, contends that the evidence is insufficient to sustain the judgment of conviction, and that the court erred in overruling his motion for a new trial. One of the grounds of the motion which is strenuously insisted upon is based upon newly discovered evidence. Concerning the contention that the judgment is not sustained by sufficient evidence, it is sufficient to say that the evidence with regard to the sexual act is in direct conflict.

The prosecutrix most emphatically stated in her testimony that the appellant, on or about the 16th day of August, 1908, had sexual intercourse with her while she and he were out riding together in his buggy; that she never had sexual intercourse with any one else either before or after the act in question, while appellant, upon the other hand, just as emphatically denies such intercourse either on that occasion or at any other time. There are some facts in evidence which, to some extent, tend to corroborate the prosecutrix, while the evidence in corroboration of appellant's claims is much stronger. In view of the circumstances there is no escape from the conclusion that neither the prosecutrix nor the appellant could be mistaken with regard to whether the sexual act took place or not. They either had or did not have the sexual intercourse as testified to by the prosecutrix. This, no doubt, is the view the jury entertained, and thus concluded that, under all the circumstances, the statements of the prosecutrix were more worthy of belief than were those of the appellant and his witnesses, none of whom, except the appellant, were present when the alleged offense was committed.

The question with respect to the weight of the evidence was fully and fairly submitted to the jury, and in view that there is substantial evidence in support of their verdict we are powerless to interfere. Moreover, the trial court, after having heard and seen the witnesses testify has approved the finding of the jury, and we must assume that he did so because he was satisfied with the result. It is elementary that, in granting or refusing motions for new trials, a certain amount of discretion is vested in the trial courts which they alone can exercise. This court may not usurp the functions of the trial courts and exercise this dis- **1, 2, 3** cretion for them in granting motions for new trials, and grant them whenever in our judgment, from a mere inspection of the record, a new trial should have been granted. Before we can reverse a judgment some good, legal cause therefor must affirmatively be made to appear. Nor can we, under the guise of reviewing an alleged abuse of

discretion of the trial court, pass upon the weight of the effect of the evidence. If there is substantial evidence in support of the verdict, we are powerless to interfere with it, except upon questions of law. This is the clear import of our Constitution and has become the settled policy of this court as appears from the following, among other cases: *State v. Moore,* 36 Utah, 521, 105 Pac. 293; *State v. Endsley,* 19 Utah, 478, 57 Pac. 430; *State v. Webb,* 18 Utah, 441, 56 Pac. 159; *State v. Halford,* 17 Utah, 475, 54 Pac. 819; *State v. McCune,* 16 Utah, 174, 51 Pac. 818. From the foregoing it follows that we cannot disturb the judgment upon the first ground referred to.

At the trial of the case a physician was called as a witness who testified on behalf of the state that at the time of the trial the prosecutrix was pregnant and that she had been so for a period of about five or five and one-half months, and that he could fix the time of conception within about one-half month. The trial took place on the 9th day of February, 1909, and as we have seen, the sexual act in issue, as testified to by the prosecutrix, occurred on or about the 16th day of August, 1908, or not quite six months before the trial. Two physicians filed affidavits in support of the motion for a new trial from which it, in substance, is made to appear that the prosecutrix was delivered of a child on the 28th day of March, 1909, and that on the 9th day of April following the said physicians examined said child. One of the physicians in his affidavit says "that said child, if not a full-term child, was about an eight-months child; that is, said child was born a period of about eight months after date of conception." The other physician testified "that said child, if not a full-term child, was not less than an eight-months child." It is contended that in view of the testimony of the prosecutrix, she must have conceived on August 16, 1908; that from that date to the date of the birth of the child is only about seven and one-half months, in fact a few days less than that; that if the child was an eight-months child, as the physicians state it was, then the sexual act complained of could not have taken place as the prosecu-

trix testified it did, and hence it is contended she is further
contradicted by these circumstances, and the appellant's tes-
timony is correspondingly corroborated thereby. This does
not necessarily follow. True, the normal period of gestation
of the human species, as known and recorded for over 3000
years, is from 270 to 280 days, or approximately nine calen-
dar months. It is equally well known that some births occur
within a much shorter period, and while such occurrences
are not frequent they do sometimes occur in a shorter time
even than was the case this instance. *Peterson v. People,* 74
Ill. App. 178; *Hull v. State,* 93 Ind. 128. It will be ob-
served that neither of the physicians (who, we must assume,
made the strongest possible statement, they could in their
affidavits in behalf of appellant) says that the child of which
the prosecutrix was delivered on March 28, 1909, was a full-
term child, but they in effect testify that it was about an
eight-months child. The exact time that elapsed between
August 16, 1908, the date of the alleged sexual act, and the
date of the birth of the child, was 225 days, or, if expressed
in months, about seven and one-half months. From the
affidavits of the two physicians it is also made to appear that
they did not see and examine the child until the 9th day of
April, 1909, or nearly two weeks after it was born. The fact
that they say that if the child was not a full-term child it was
about an eight-months child may thus, in a measure at least,
be accounted for. At all events it does affect the weight to
be given to their statements. Moreover, to use the term
"about eight months" is not far from saying seven and one-
half months. There is, therefore, no serious conflict between
the facts stated by the physicians in their affidavits in sup-
port of the motion for a new trial and the conclusions that
may be deducted from the statements of the prosecutrix, when
considered in connection with the date of the birth of the
child and the statements with respect to whether it was a
full-term child or not. That such discrepancy is not a cause
for granting a new trial when, as in this case, there is direct
and positive evidence of the sexual act, is well and clearly
illustrated in the two cases last above referred to.

Assuming, but not deciding, that the facts stated by the two physicians come within what is usually denominated as newly discovered evidence, yet those facts in one sense also clearly come within what is termed cumulative evidence. In no event, therefore, is this so-called newly discovered evidence "so conclusive in its character as to raise a reasonable presumption that the result of **4, 5** of a second trial would be different from the first," which would have to be the case in order to authorize us to grant a new trial. (*Armstrong v. Davis*, 41 Cal. 499; *Stoakes v. Monroe*, 36 Cal. 388; Hayne, New Tr. and App., sec. 91.)

In view of the foregoing, we cannot interfere with the verdict of the jury, and especially not when the trial court has reviewed and approved the jury's findings.

The judgment therefore is affirmed, with costs.

STRAUP, C. J. and McCARTY, J., concur.