[Civ. No. 6697. First Appellate District, Division One.—April 13, 1929.]

DOROTHY C. PUTNAM, Respondent, v. PICKWICK STAGES, NORTHERN DIVISION, INC. (a Corporation), Appellant.

B. P. Gibbs and Warren E. Libby for Appellant.

E. B. Drake for Respondent.

LANDIS, J., *pro tem.*—This action is one for damages resulting from an automobile accident.

The cause was tried by jury and verdict for $7,500 returned in favor of the plaintiff.

Judgment was thereupon entered in favor of the plaintiff for the damages so assessed by the jury.

The appeals of the defendant are from the judgment and from an order denying a new trial.

Appellant bases its appeals upon the following five grounds:

1. The evidence does not justify the verdict. (a) The proof discloses no negligence on the part of defendant. (b) Defendant was guilty of contributory negligence as a matter of law.

2. The verdict is against law.

3. The court erred in its instructions to the jury.

4. Defendant's motion for a new trial should have been granted on the ground of newly discovered evidence.

5. The amount of the judgment awarded is excessive.

Briefly stated, plaintiff alleges: "that on August 30, 1925, while she was operating an automobile on Ventura boulevard in Los Angeles county, California, and when slowing down on account of congested traffic when near the intersection of said boulevard and Canyon drive, the defendant, by its agent, so negligently operated one of its auto busses headed

in the same direction that it ran into and struck the rear of her said automobile; that in said accident, caused alone by the negligence of defendant, plaintiff was hurt, in her health, strength and activity; received a profound shock to her nervous system, and bruises upon the head, body and person; was made sick, sore and lame thereby and particularly receiving a straining and spraining of the muscles and ligaments of the neck, back, spine and hips, and a bruising and contusing of the lungs which resulted in traumatic pneumonia; that said injuries are permanent; that from said injuries plaintiff has suffered great physical pain and mental anguish, and will continue to suffer, all to plaintiff's damage in the sum of $15,000.'' Plaintiff also claims the following damages: $66 for services of physician and surgeon; $150 for nurse; $16.84 for medicines; $12 for massage treatments; $252 for loss of time during which she was unable to follow her employment as an instructress in a clerical position in a school, and the sum of $89.40 damages to her said automobile; in all aggregating the sum of $15,586.24.

Appellant answered, specifically denying each of the material allegations of the complaint except that it admitted the agency of the driver of the autobus and that he was working within the scope of his authority, and in addition thereto alleged affirmatively that respondent was guilty of negligence, directly and proximately contributing to the happening of the accident in that she did not exercise ordinary care, or any care, for her own safety, but so managed and operated her said automobile as to cause and contribute to the happening of the accident.

Plaintiff and the driver of defendant's autobus were the only witnesses to the accident who testified. With respect to the accident the material portion of plaintiff's testimony is as follows: She was driving a Cadillac touring car at twenty or twenty-five miles an hour and in line of other traffic on a very busy afternoon about seven o'clock P. M.; that both headlights and tail-light were burning, and by reason of the slowing up of the line of traffic, particularly the automobile just ahead of her, her red "Stop" light at the rear of her car went on; she then put her hand out to the left and down, as required in such cases, and put on her brakes; before coming in contact with the automobile ahead of her, the defendant's stage which was being driven,

according to her version within three feet of her car, struck her car, knocked her car into the car ahead of her, her car rebounded and was again struck by the stage; that she was driving her car fifteen feet back of the car in front of her.

The material conflict between the testimony of plaintiff and the testimony of the driver of the stage with respect to the accident, results from the testimony of the driver of the stage, which briefly stated is as follows: "When the car that Miss Putnam was driving seemed to hit something and bounce back, come to a sudden stop; at that time the stage was approximately 20 or 25 feet from plaintiff's car; I seen everything had stopped real sudden. I could not go to the left on account of the traffic coming toward me. I was driving a right-hand drive car, and I was over a little bit to the left of her, to watch the signals and other cars coming toward me, and when I started to go to the right to miss her, I did not have room, and for fear of turning her over, I squared the car up and gave her a bump. I was almost stopped when I hit her." The stage driver also testified that he applied both his foot and emergency brakes; the condition of which was good; that he was traveling about twenty or twenty-five miles per hour; that the weight of his stage was approximately five tons; that after the accident, both he and plaintiff got out of their cars and gave to each other their respective names and numbers of their cars. The principal contention of defendant is that the car ahead of plaintiff suddenly slowed down, causing her to bump into it, she being too close or otherwise operating her car in such a manner as to be unable to prevent the collision. That the impact of plaintiff's car with the car ahead was the proximate cause of the accident and this was brought about by the negligence of the plaintiff or the driver ahead of her, and that such negligence precludes recovery from defendant, even though it, too, may have been negligent.

The testimony of plaintiff that she was fifteen feet behind the car ahead of her; that when the traffic slowed down she gave a stop signal with her hand and also with the rear red "Stop" signal, that the light from the red "Stop" signal showed on the rear of her car, and that she applied her brakes, standing as it does, uncontradicted, is sufficient to warrant the conclusion that she employed the degree of care and prudence required of auto drivers using the public high-

way; and considered in connection with her statements that were contradicted by defendant's driver very clearly placed the evidence within the province of the jury to decide the question.

It is sufficient to say that the evidence was conflicting and that the jury were the judges of the credibility of the witnesses. If they believed the testimony favorable to the plaintiff, they could not have properly returned a different verdict.

Error is claimed by reason of the court's refusal to give the following three instructions:

1. An instruction directing the jury to return a verdict in favor of defendant and against the plaintiff. From what we have already said it is obvious that error was not committed in refusing this instruction.

2. This instruction reads as follows: "If you find from the evidence in this case that the plaintiff knew the defendant's stage was immediately behind her automobile and so close that if she stopped or materially slackened her speed it would likely result in injury and damage to plaintiff, and knowing said facts, the plaintiff did suddenly slack the speed, or stop, her automobile, such negligence proximately contributed to the accident then plaintiff cannot recover in this case and your verdict will be for the defendant." This instruction was properly refused.

3. This instruction in effect undertakes to state the degree of care required of transportation companies to their passengers, etc., a question not involved in this case and was also properly refused.

It is then contended by appellant that the court erred in giving the following instruction: "You are instructed that it was the duty of the defendant, through its driver in charge of the auto stage on the occasion in controversy, to have kept a vigilant lookout for vehicles ahead for the purpose of preventing driving against or striking same, and a failure, if any, on his part to have done so was negligence," and particularly as follows: That it was prejudicial to defendant, for the reason that it specifically imposes upon defendant's driver a duty which it does not with equal particularity impose on plaintiff; that it suggested to and left with the jury the impression that a higher degree of care in that respect was required of defendant than of

plaintiff and also suggested the thought that defendant's driver had in fact failed to keep a proper lookout for vehicles ahead. Although we agree with the contention of defendant to the effect that while the instruction in itself is not improper and while the defendant's driver was in duty bound to keep a vigilant lookout for vehicles ahead to avoid striking them, there was a corresponding duty so to do on the part of plaintiff, in view of the fact that the rule as thus declared was in effect given to the jury by the court in other instructions, coupled with the further fact that defendant did not ask for an instruction that such duty also applied to plaintiff, defendant cannot complain that none was given.

■ Complaint is also urged that the court failed to define the term "preponderance of evidence," used in several of its instructions. Defendant having failed to request the court to give such an instruction is in no position to complain. (*Worthman* v. *Isenstein,* 182 Cal. 108–111 [187 Pac. 12]; *Weaver* v. *Carter,* 28 Cal. App. 241 [152 Pac. 325]; *Townsend* v. *Butterfield,* 168 Cal. 564 [143 Pac. 760]; *O'Connor* v. *United Railroads,* 168 Cal. 43 [141 Pac. 809]; *Hardy* v. *Schirmer,* 163 Cal. 272 [124 Pac. 993].) The jury was very fully and fairly instructed.

Appellant also complains and urges that its motion for a new trial should have been granted and relies particularly upon the ground of newly discovered evidence which could not with reasonable diligence have been produced at the time of the trial.

■ To justify the granting of the motion on the ground of newly discovered evidence the moving party must make a strong case and must show due diligence to discover and produce the evidence on a former trial, and that his failure to do so was not the result of his own laches; and the action of the trial court will not be disturbed except upon a clear showing of an abuse of discretion. (*Baker* v. *Joseph,* 16 Cal. 173–180; *Arnold* v. *Skaggs,* 35 Cal. 684–688; *Stoakes* v. *Monroe,* 36 Cal. 383; *Rockwell* v. *Italian-Swiss Colony,* 10 Cal. App. 633 [103 Pac. 162]; *Foster* v. *National Ice Cream Co.,* 29 Cal. App. 484 [156 Pac. 985]; *Fresno Estate Co.* v. *Fiske,* 172 Cal. 583 [157 Pac. 1127].)

■ With respect to the contention of appellant that the newly discovered evidence could not with reasonable dili-

gence have been produced at the time of the trial, from the affidavits presented in support thereof it is shown that the newly discovered evidence consists of the testimony of G. C. Bourquin and P. S. Titus, both of whom were passengers on the stage at the time of the accident; that their whereabouts were discovered by advertising in newspapers and although the said discovery occurred after the trial, the showing clearly indicates that the advertisements also occurred after the trial. The accident happened August 30, 1925. Complaint was filed October 19, 1925, and answer filed October 30, 1925. The affidavit of B. P. Gibbs, one of the attorneys for defendant and who it appears was conducting the investigation in connection with locating the whereabouts of the driver and the passengers, shows that affiant learned from Mr. F. E. Burdette, superintendent of the defendant, as early as January, 1926, that there were passengers on the stage. It appears that the whereabouts of the witnesses were very readily ascertained. Affiant undertakes to justify his failure to advertise sooner for the reason that he first wanted to confer with Harris, the driver. He admits that he located Harris on January 4, 1927, but did not confer with him until January 25, 1927, about three weeks later and even then he neither employed the method available for locating the passengers that later proved to be effective, nor did he ask for a continuance or postponement of the trial which was set for a week later, but chose to go to trial without them and then did actually locate them within a very few days after the trial. Knowing, as it is admitted it did, of the importance of the testimony, defendant should have moved for a continuance, and, failing to do so, it must be held that it entered upon the trial at its peril. (*Berry* v. *Metzler,* 7 Cal. 418; *Klockenbaum* v. *Pierson,* 22 Cal. 160; *Scanlan* v. *San Francisco etc. Ry. Co.,* 128 Cal. 586 [61 Pac. 271].)

The last question for consideration is whether or not the verdict is as a matter of law excessive.

In the case of *Kelley* v. *Hodge Transp. System,* 197 Cal. 598–610 [242 Pac. 76, 81], the following rule is laid down, to wit: "Unless we are able to say that the award of damages made by the jury and sustained by the trial court was so grossly disproportionate to any compensation reasonably warranted by the facts as presented to us on appeal as to

shock the sense of justice and raise at once a presumption that it was the result of passion, prejudice, or corruption, rather than an honest and sober judgment, this court may not exercise the power of revision."

This rule is approved in the late case of *Chappel* v. *San Diego & Arizona Ry. Co.*, 201 Cal. 560 [258 Pac. 73]. The following is a short *résumé* of plaintiff's testimony concerning her injury: "I was struck from the rear; it was a perfect jolt from the rear, which gave me a veritable snap of my neck and back at the time of the accident. I had terrific pain up and down my spine and in the back of my neck; I was in bed four weeks. I was given treatments by Dr. Spiers. The doctor prescribed and I have continuously worn a surgical appliance from the middle of the body down to below the hips. I have pain in my back most of the time."

Briefly stated, the testimony of Dr. Ora I. Tower is as follows: "I saw plaintiff on September 2, 1925; she was then in bed; she had quite a severe bruise over the left side to the left of the heart covering the third, fourth and fifth ribs; diagnosis of pneumonia was made, caused from an injury to the lungs. I think the pneumonia was due to her injury. I saw her at intervals of a week, ten days or two weeks for several months. At the time of the injury I simply thought the back was sprained, but in March, 1926, X-rays showed that there was actually a shoving forward of one of the vertebrae, the fifth or lumbar vertebra. I referred her to Dr. Spiers, who is a specialist in orthopedic surgery."

Dr. Owen R. Stafford, who was a graduate physician and had practiced twenty-six years, testified: "I specialize in X-ray work; took an X-ray of plaintiff on March 18, 1926; it showed a partial dislocation of the fifth vertebra on the sacrum, the fifth lumbar vertebra; it would limit motion and cause probably a change of posture."

Dr. Homer W. Spiers, graduate physician and surgeon of Columbia College of New York City, testified as follows: "The X-rays show in the lateral view what is known as spondylolisthesis, or a forward dislocation of the fifth lumbar vertebra of the sacrum; described the treatment given, stated he did not believe that anatomically the condition of plaintiff could be changed; that cannot be replaced; it is a permanent partial disability."

The expert opinions above stated were quite materially contradicted by a Dr. Ledyard, called by the defendant.

Dr. Harold B. Barnard, an orthopedic surgeon, was called as an expert on behalf of the court, and testified: That he was connected with the Orthopedic Hospital as acting chief surgeon, and that he had examined the plaintiff at his office; that he made a physical examination of her, taking the usual history, and examined X-rays that the patient brought to him. He was asked and stated ''an examination of the patient and examination of further X-rays which I had taken at the conclusion of my physical examination, disclosed an injury to the low back region, characterized by a forward displacement of the last lumbar vertebra on the sacrum. The condition may be spoken of as spondylolisthesis, and is characterized by an alteration in the normal arrangement of this joint. The physical examination and history further disclosed that a considerable amount of disability has resulted from this accident, and there were further signs and symptoms which indicated without a doubt in my mind that she was not entirely recovered from this accident even on this date.''

It is obvious that under the showing made, and guided by the rules of law announced, we are unable to say that the reward of damages made by the jury and sustained by the trial court are excessive.

With respect to plaintiff's motion for an order striking from the reporter's transcript on appeal certain portion of said transcript on the grounds that said matters are not authenticated as required by law and are not legally a part of the record on appeal in this action, the transcript as certified by the official reporter to be a full, true and correct transcript and by the trial judge certified as true and correct, and settled, allowed and made a part of the record, meets the requirements of the law and is therefore denied.

Judgment and order denying motion for new trial affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 13, 1929, and a peti-

tion by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 10, 1929.

All the Justices present concurred.