[Civ. No. 4586.   Third Appellate District.—September 7, 1932.]

BELLE PATE et al., Respondents, v. PICKWICK STAGES SYSTEM (a Corporation) et al., Appellants.

[Civ. No. 4587.   Third Appellate District.—September 7, 1932.]

FRANK PATE, Respondent, v. PICKWICK STAGES SYSTEM (a Corporation) et al., Appellants.

B. P. Gibbs, Barry J. Colding, Theodore Hale and Carroll B. Crawford for Appellants.

Cleveland R. Wright and Puter & Quinn for Respondents.

JAMISON, J., *pro tem.*—These were actions for damages for personal injuries suffered by plaintiffs through the alleged negligence of defendants. They were consolidated by stipulation of counsel. The jury found for the plaintiff Belle Pate in the sum of $5,000 and for Frank Pate in the sum of $1,000.

Judgments were thereupon rendered for said plaintiffs for said respective sums and from those judgments defendants appeal.

The facts are substantially as follows: Plaintiffs, in a Dodge coupe, were traveling north on the state highway, called the Redwood Highway, and one W. S. Chisholm with two passengers was traveling south in a Ford coupe on said highway. The two cars collided at a point on said highway where the road was practically straight for a distance of 450 feet, the place of collision being about 150 feet north of the northerly end of said straight piece of road. This collision occurred at 7:30 P. M. on October 28, 1928. At the time of the collision it was dark and a misty rain was falling. According to the evidence produced by respondents this collision was a slight one and inflicted no injury upon the occupants of the two automobiles. As a result of this collision the two cars were placed at an angle across said highway and

both of them were stopped. Shortly after they had stopped they were both struck by a stage operated by the Pickwick Stages System and driven by its agent, J. Lima, and as a result thereof respondents' car was thrown from the road and landed about 25 feet down on a steep incline and both of the respondents were injured. There is a serious conflict between appellants and respondents as to the distance the stage was from the point where the Dodge and Ford automobiles had their collision. Lima, the driver of the stage, testified that he was 30 or 35 feet from the place where the collision between the Dodge and Ford cars occurred, that he was traveling about 30 miles per hour; that when he saw the collision between these two cars he started to apply his brakes and that the brakes were set when the stage was 15 or 20 feet from them.

On the other hand, Chisholm and Meakin, passengers in the Ford car, testified that immediately after the collision between the Dodge and Ford cars, and after they had stopped, they saw the stage coming from the south, around the bend or curve at the southerly end of the straight piece of road. Chisholm placed this distance at 300 feet and Meakin at 150 to 175 feet. Lima telephoned a report of the accident the night it occurred to the superintendent of the Pickwick Stages System, and this report stated that the stage was 75 feet from the point where the Dodge and Ford cars collided at the time of said collision. Chisholm also testified that the stage was traveling fast as it came around the bend of the road, its speed being 40 or 45 miles per hour.

There was also evidence on the part of respondents that some time elapsed after the Dodge and Ford cars stopped before they were struck by the stage. Chisholm testified that he turned off the ignition and started to open the door of the Ford car before the stage struck the Ford, and Pate testified that he turned up his window and put his head out and called out to know what was happening before the stage struck his car. There was nothing to prevent the driver of the stage from seeing the position of the Dodge and Ford cars as the stage came around the southerly bend of the highway, and common prudence would have dictated the application of the brakes of the stage as soon as the position of the Dodge and Ford cars standing on the highway was seen or should have been seen by the driver of the stage.

■ If the driver of the stage did see the Dodge and Ford cars standing on the highway when he came in view of them he was guilty of negligence in not then applying his brakes, and if at that point he did not see them standing in the highway, with no obstacle intervening obstructing his view, he was also guilty of negligence. We are of the opinion that there is substantial evidence supporting the verdict of the jury that the driver of the stage was negligent and that his negligence was the proximate cause of the injuries suffered by respondents. Such being the case, the decision of the jury is binding on this court. (*Gornstein* v. *Priver*, 64 Cal. App. 249 [221 Pac. 396]; *Putnam* v. *Pickwick Stages*, 98 Cal. App. 268 [276 Pac. 1055].)

Appellants contend that the court committed reversible error in permitting respondents, over the objection of appellants, to ask the jurors the following question: "Are any of you interested as stockholders or otherwise in the California Highway Indemnity Exchange?" It is contended that the purpose of this question was to inform the prospective jurors that the appellants were insured. ■ While evidence that a defendant in an action for damages is insured against loss is not admissible (*Roche* v. *Llewellyn Iron Works Co.*, 140 Cal. 563 [74 Pac. 147], and it is improper for counsel to endeavor to get the fact before the jury by questions designed solely for that purpose, nevertheless it is proper for counsel to ask in good faith such questions as may be necessary to ascertain whether prospective jurors are free from bias or prejudice that might affect their verdict. (*Girard* v. *Irvine*, 97 Cal. App. 377 [275 Pac. 840]; *Reneau* v. *Hirsch*, 88 Cal. App. 1, 8 [262 Pac. 1100]; *Arnold* v. *California Portland Cement Co.*, 41 Cal. App. 420 [183 Pac. 171].)

In *Hasty* v. *Trevillian*, 102 Cal. App. 405 [283 Pac. 148, 149], the court, after holding that asking prospective jurors whether or not they owned stock or bonds in any insurance company engaged in writing indemnity insurance, stated that such question standing alone was not error, and said:

"The defendants argue that if the verdict is excessive or the case made by the plaintiff is weak, such questions constitute prejudicial error. An examination of the record will disclose that the instant case cannot be said to fall within the rule last stated. As we have shown below, the verdict was not excessive; and the plaintiff introduced evidence tend-

674

ing to show that at the time of the impact the defendant driver was driving on her left-hand side of the street at a speed of forty-five miles per hour. If the jury believed that evidence then it cannot be said the case of the plaintiff was weak.''

So, in the instant case, if the jury believed the evidence on the part of respondents that the driver of the stage saw or should have seen the Dodge and Ford cars standing on the highway when he was from 150 to 300 feet from them, and by the exercise of ordinary diligence could have stopped the stage in time to have avoided a collision with them, it cannot be said that respondents' case was weak.

The next contention of appellants is that the damages are excessive.

Frank Pate testified that as a result of the impact of the stage with his car he suffered a broken jaw and a sprained wrist, the skin being torn loose almost all around it; that he and his wife were taken to a hotel in the town of Scotia; and there secured a physician, who after examination of his injuries took him to a hospital and had an X-ray made; that for a period of three weeks he could not open his mouth and for six weeks after the accident could not chew; that he suffered a great deal of pain and that by reason of the injury to his wrist it is weakened.

Belle Pate testified that her shoulder, arm and neck were seriously injured and caused her great pain; that the muscles were torn loose; that for a long period, by reason of the pain, she could not sleep at night; that as a result of said injury she has to a large extent lost the use of her left arm and hand; that she cannot raise or put her hand behind her; that she is hampered in doing her housework; that she cannot do her ironing or washing or similar work; that she went to San Francisco and had treatment from a physician there, but that the pain and disability continued to exist.

Doctor John N. Chain made an examination of both respondents on December 6, 1930. His examination of Frank Pate showed that the wrist had not recovered from the injury, the grip of his hand had diminished twenty-five per cent and was tender under pressure. He found a permanent disfigurement of the face and that the wrist would be permanently disabled.

From his examination of Belle Pate he found that the muscles of the left shoulder had been torn loose, that her left arm was disabled so that she could not raise it up and any attempt to do so caused her pain, that this disability was permanent.

It is the well-settled law that, upon appeal, the decision of the trial court and jury, upon the amount of the damages, cannot be set aside unless the verdict is so plainly and outrageously excessive as to suggest, at first blush, passion or prejudice or corruption on the part of the jury. (*Lahti* v. *McMenamin*, 204 Cal. 415 [268 Pac. 644] ; *Hale* v. *San Bernardino etc. Co.*, 156 Cal. 713 [106 Pac. 83].) We find nothing in the record in these cases that indicates that the jury were influenced in rendering the verdicts by passion or prejudice or corruption.

The judgments are affirmed.

Preston, P. J., and Plummer, J., concurred.