STATE v. MILLS.

No. 7682.   Decided October 15, 1952.   (249 P. 2d 211.)

See 75 C. J. S., Rape, sec. 66. Necessity for corroboration of prosecuting witness. 44 Am. Jur., Rape, secs. 106 et seq; 60 A. L. R. 1124.

*D. H. Oliver,* Salt Lake City, for appellant.

*Clinton D. Vernon,* Atty. Gen., *Richard J. Maughan,* Asst. Atty. Gen., for respondent.

CROCKETT, Justice.

Leo Mills was convicted by a jury of the crime of carnal knowledge. On this appeal he claims that the jury disregarded the court's instructions and that the verdict was based on passion and prejudice. These two contentions are but corollaries of one problem: Was the evidence sufficient to sustain the verdict?

The facts, in summary, are:

The victim of the offense is a 17 year old girl; she lives with her parents; had worked as a nursemaid in a Salt Lake City home for about two and a half months during which time the defendant was also employed there as a chauffeur. This was the only acquaintance or social contact they had until the night of the crime. On October 29, 1951, at about 7:30 p. m., while the girl was preparing to go to Mutual (a church meeting), defendant called her on the telephone and told her he wanted to talk to her but wouldn't tell her what about. Pursuant to agreement, she met him lat the corner near her home, got into his car and rode around for a while; by about 11 o'clock they had driven to Parley's Canyon near a reservoir where the act complained of occurred. Defendant later dropped her off near her home, she arriving there some time between 3 and 4 o'clock in the morning. The girl informed Police Officer Jackson, who had been hunting for her, what had taken place. A doctor who examined her within a few hours after she arrived home concluded that an act of sexual intercourse had taken place, a conclusion based upon the presence of spermatazoa, ruptured hymen and other findings.

Defendant assails the jury verdict because the critical portions of the facts just narrated rest upon the uncorroborated testimony of the girl. The line of authorities and the principle mainly relied upon by the defendant are epitomized in the Oklahoma case of *Morris* v. *State*[1] which states:

"* * * there is no rule of law which forbids a jury to convict of rape on the uncorroborated testimony of the prosecutrix, provided they are satisfied beyond a reasonable doubt of the truth of her testimony, yet the courts have always recognized the danger of conviction on her uncorroborated testimony, and the testimony of the prosecutrix, if inherently improbable and uncorrobated, will not justify or support a conviction; as the only reasonable conclusion in such cases is that such verdicts are the result of passion or prejudice, and therefore contrary to law."

We are not in disagreement with the rule defendant contends for. If the State's evidence is so "inherently improbable," as to be unworthy of belief, so that upon objective analysis it appears that reasonable minds could not believe beyond a reasonable doubt that the defendant was guilty, the jury's verdict cannot stand. Conversely, if the State's evidence is such that reasonable minds could believe beyond a reasonable doubt that the defendant was guilty, the verdict must be sustained.[2]

The main points made by defendant in claiming that the girl's story is incredible are:

(1) That the parties had a very slight acquaintance and no prior social association,

(2) That the defendant is a married man,

(3) That is was more likely that the girl was shielding some boy friend, and

(4) The strength of defendant's alibi.

---

[1] 9 Okl. Cr. 241, 131 P. 731, 735; *Williams* v. *State*, 61 Okl. Cr. 396, 68 P. 2d 530.

[2] *State* v. *Montgomery*, 37 Utah 515, 109 P. 815.

None of the factors emphasized by the defendant, either singly or together, are such as to make the evidence of the State incredible or the testimony of the prosecutrix "inherently improbable." The parties had actually been acquainted for some time, and working together as fellow servants in the same home may well have developed more than a "slight acquaintance." In fact, the girl asserts that within a few days before the crime defendant phoned her three or four times.

The perpetration of sex offenses is not confined to single men. The fact of a married man being involved in a sex offense is not, in and of itself, so unusual as to cast doubt upon the girl's story. Defendant's suggestion that she was protecting some boy friend by blaming the defendant finds no support whatever in the record. The only thing shown concerning that possibility is that she did on occasions have dates with boys.

Mills asserts that the jury disregarded the court's instructions by ignoring the testimony relating to his alibi. His story was that he was at home when the victim was ravished, that he had been preparing for a vacation and left for California at 4 a. m. the next morning. This was corroborated by his wife, his son, and two other witnesses, Henry Colding and Bernard Gordon. With respect to the latter two, the disinterested witnesses, it was not definitely established that it was the night of October 29th that they separately visited defendant at his home. Gordon did state that he was there on Monday night (the 29th was on a Monday) when Mills declared his intention of leaving on his vacation the next morning.

Certainly the jury could have regarded this alibi evidence of defendant as sufficient to raise a reasonable doubt of his guilt if it had so desired. However, in addition to the girl's story, there was other substantial evidence to refute it. Officer Jackson, who had been called by the girl's parents after she failed to seasonably return home, testified

that in making a search for the girl he went to the Mills home at about 2 o'clock in the morning and the house was dark. When he returned there at about 3 a. m. with the girl's father, Mrs. Mills came to the door and in answer to his inquiry said she was "surprised to know where Mills was" and that "* * * she didn't know where he had gone." In the face of this statement of his own wife that he was not at home, it can hardly be said that the jury were compelled to believe his alibi as the only reasonable conclusion to be drawn from the evidence.[3]

There is without doubt wisdom in recognizing the danger of conviction of a sex crime upon the uncorroborated testimony of the prosecutrix and of viewing the same with caution as suggested in *Morris* v. *State, supra.* Yet if the law did not permit conviction on such testimony, the guilty would often go unpunished. Seldom are such deeds perpetrated in the presence of others. Where there is nothing inherently unreasonable or improbable in her testimony, it alone may support a conviction if the jury finds guilt beyond a reasonable doubt.[4]

We have had occasion to review the quantum of proof necessary to support a conviction of the crime of carnal knowledge against a charge of insufficiency of the evidence and have sustained it in a case where the position of the defense seemed considerably stronger than in the instant case.[5] Justice Frick, for the court, stated [37 Utah 515, 109 P. 816]:

"There are some facts in evidence which, to some extent, tend to corroborate the prosecutrix, while the evidence in corroboration of appellant's claims is much stronger. * * * neither the prosecutrix nor the appellant could be mistaken with regard to whether the sexual act took place * * * the jury * * * concluded that, * * *

[3]See *State* v. *Robinson,* 116 Utah 397, 211 P. 2d 177.
[4]*State* v. *Bayes,* 47 Utah 474, 155 P. 335; *State* v. *Reese,* 43 Utah 447, 135 P. 270.
[5]*State* v. *Montgomery, supra.*

the statements of the prosecutrix were more worthy of belief than those of the appellant and his witnesses, * * *."

Defendant asserts that the jury's verdict was actuated by "passion and prejudice" and in support thereof points not only to the strength of his alibi, but also to what he calls the weakness of the case against him and the fact that he is a Negro. The first two points have been ■ disposed of. The record is devoid of any indication whatsoever of any racial prejudice. By agreement of the parties no reference was made to the matter throughout the trial. Jurors are usually fair and conscientious; we cannot presume prejudice. There certainly would have to be something more substantial than the fact that defendant is a Negro and the girl white, coupled with the bare contention by plaintiff that such prejudice existed, before serious consideration could be given to it.[6] There being no foundation for defendant's claim that the verdict was a result of passion and prejudice, the judgment is affirmed.

WOLFE, C. J., and WADE, McDONOUGH, and HENRIOD, JJ., concur.

---

[6]See 78 A. L. R. 147; 3 Am. Jur. p. 617.