[Civ. No. 23726.   Second Dist., Div. Two.   June 25, 1959.]

RUSSELL ROSSMAN et al., Appellants, v. PARKER WILLIAM HALL, Respondent.

L. I. Williams for Appellants.

Moss, Lyon & Dunn, Homer. C. Hathaway and Henry F. Walker for Respondent.

HERNDON, J.—In this personal injury action growing out of an automobile collision at an intersection, the jury's verdict was in favor of defendants. Plaintiffs have noticed an appeal from the verdict and judgment and from the order denying their motion for a new trial. No claim is made in the briefs that any error occurred in the admission or rejection of evidence, in the giving or refusal of instructions, or in any other respect, during the trial. Neither is it contended that the evidence is insufficient to support the verdict and the judgment. The sole contention advanced is that the trial court erred in denying plaintiffs' motion for a new trial on the grounds of surprise and of newly discovered evidence.

Four witnesses testified at the trial: plaintiffs Russell and Betty Rossman, one Rudy Caldron and defendant Hall. Plaintiffs' theory was that the accident was caused by defendant's failure to obey the command of a boulevard stop sign before entering the highway upon which they were traveling. The testimony of the Rossmans tended to support this theory as did that of Rudy Caldron. The testimony of the latter witness is summarized as follows in the opening brief: "The plaintiffs called Rudy Caldron, a Mexican boy 13 years of age at the time of trial, who testified that he was drinking a soft drink in a gasoline service station at the northwest corner of the intersection and was looking in the direction of the intersection at the time. He said that

he saw a dark Chevrolet, identified as that of Mr. Hall, the defendant, going east on Katella. That this car did not make any stops either before entering the intersection or during the time it was within the intersection until after the collision with the northbound car in which the Rossmans, the plaintiffs, were riding.''

It further appears from appellants' opening brief that ''[u]pon calling Rudy Caldron to the witness stand, or just before, plaintiffs' counsel approached the bench and stated that the witness was afraid to testify, but did not inform the Court of any reason why the witness was afraid. Upon the witness being sworn the Court told Rudy to state his name and told him that he was there only for the purpose of telling the truth and for no other reason, and that he should answer truthfully questions put to him by plaintiffs' counsel and by defendant's counsel.''

On cross-examination defendant's counsel showed Rudy a statement which he acknowledged he had signed. This statement set forth a version of the facts substantially different from that to which the witness had testified on direct examination. Although the statement was admitted in evidence over plaintiffs' objection, it is not now contended that its admission was erroneous. The contention appears to be that the production of the impeaching statement constituted ''surprise''.

The defendant Hall testified in substance that as he approached the intersection he made the boulevard stop, then went out into the intersection and stopped a second time at a divider in the center of the highway, that he moved forward slightly and stopped a third time before entering the lane of traffic in which plaintiffs were moving. He testified that he was completely at a standstill when plaintiffs' car collided with him.

## Surprise

The basis of appellants' claim of surprise is set forth in the affidavit of their counsel. After referring to the testimony given on cross-examination by the witness Caldron concerning the statement he had signed at the instance of defendant's investigator, counsel averred: ''Counsel for plaintiff was surprised at this testimony and was unaware that defendant's representatives had taken any statement. After the trial the boy was asked about his inconsistent statement and asked about this purported written statement. The boy

replied that some man called on him and wrote down the statement entirely as the man saw fit and then indicated to him that he had to sign it, which he did. The boy stated at the time of the trial that he was afraid he would be hurt if he told the truth. Affiant states that this surprise was unexpected and could not have been anticipated. It was extremely prejudicial and resulted in the loss of the case to the plaintiff. If affiant had been aware of this statement taken by the insurance adjuster plaintiffs could have investigated the taking of this statement and could have rehabilitated this witness by calling the insurance adjuster or producing other evidence showing the facts surrounding the taking of this statement.''

We find no semblance of merit in the contention that the production and use by defendant of the statement which impeached the witness Caldron constituted ''surprise'' of such a nature as to require the granting of a new trial. It appears from the affidavit of counsel that the name of the witness appeared on the police report and that counsel had interviewed him, but it nowhere appears that counsel had inquired, prior to calling the witness to the stand, whether he had been interviewed by anyone else or whether he had given a statement. Counsel for plaintiffs evidently did not claim ''surprise'' at the trial when the damaging statement was produced. Apparently, it was only *after the trial* that counsel made any inquiry of his witness about the statement, or the circumstances under which it was given or the manner in which it was prepared and signed. Since there is no sufficient showing of any irregularity in the obtaining or in the use of the impeaching statement, we must characterize appellants' contention with respect to it as completely frivolous. (See *Fletcher* v. *Pierceall*, 146 Cal.App.2d 859, 865-867 [304 P.2d 770]; *Kauffman* v. *De Mutiis*, 31 Cal.2d 429, 432 [189 P.2d 271].)

### Newly Discovered Evidence

Appellants' arguments relating to the second asserted ground of their motion—that of newly discovered evidence—are also entirely implausible. We have noted that no affidavit of either of the plaintiffs was filed. Counsel's affidavit, insofar as it relates to newly discovered evidence, avers in substance that until after the trial he knew nothing of the witnesses John and Edward Wais. He states that in preparation for the trial he obtained a copy of the police report

relating to the accident, and that the only witness whose name was given therein was Rudy Caldron. Counsel states that in addition to obtaining a copy of the police report, affiant made a diligent effort to locate any other witnesses and "diligently canvassed the neighborhood in the area surrounding the scene of the collision but learned of no one who knew anything in particular about the accident except the hereinbefore referred to witness Rudy Caldron. Affiant therefore believed that the only disinterested witness who actually saw the collision was Rudy Caldron."

However, it appears from the record without dispute that long prior to the trial plaintiff Russell Rossman gave a written statement to an investigator for defendants' insurance carrier. This statement, which was offered by defendants and received in evidence without objection, contains, among other things, the following: "There was a car following me. The driver gave me his card. His name is John Wais, Jr., asst. sales mgr. Pittsburg Steel Co. Statler Center Los Angeles. He said he was following me and overhauling me and he was going 40-45 M.P.H. His son was really driving on a driver's permit and the father was with him."

Thus, it clearly appears that long before the trial plaintiff Rossman knew the name and address of the witness John Wais and knew that Wais and his son were closely following plaintiff's car immediately before the accident. The act of Wais in giving Rossman his business card not only gave clear notice that he was a potential witness, but could reasonably be construed as practically an offer to testify.

By way of explaining the manner in which he learned of the "newly discovered" witnesses, appellants' counsel, in his affidavit, stated as follows: "When affiant pointed out to the plaintiffs that they probably would have prevailed had they had other evidence which showed the defendant was actually moving at the time, Mr. Rossman then recalled that he had been given a card by some person at the scene of the collision but it was his impression that the man was just being a 'good samaritan' and that he did not actually see anything of any consequence. Mr. Rossman then remembered that when the insurance adjuster came out to take his statement he was told that the company was no doubt liable but that he wanted to get all of the facts. Mr. Rossman recalled that he had this party's card at the time that the insurance adjuster called and he believed that he showed it

to the adjuster, but he doesn't remember having the card after the conversation with the adjuster. Mr. Rossman then recalled that when he read the statement in Court that was taken by the adjuster, he noted that it had a name of some party in it. When affiant heard this he immediately went to Department 68 to see the exhibits of defendant which were introduced in the matter. Out of said statement affiant did obtain the name of one John Wais, Jr., whose name Counsel's file in the matter did not show as a witness. Affiant thereafter called on this party and learned that both he and his son Edward actually witnessed the accident. Said Mr. Wais stated that both he and his son actually saw the eastbound car within the intersection and further saw it strike the plaintiffs' car on the rear. Mr. Wais further stated that at no time did the defendant's car come to a stop before the collision.''

Thus it appears from the affidavit that counsel learned the names of the new witnesses by reading the statement of his own client—a statement which evidently he did not take the trouble to read before it was received in evidence during the course of the trial. It is self evident that the testimony of these witnesses was available to plaintiffs at the time of trial. There is such an obvious lack of an adequate showing of diligence that the ruling of the trial court is beyond serious challenge. (See *Allin* v. *Snavely*, 100 Cal.App.2d 411, 415-416 [224 P.2d 113]; *Putnam* v. *Pickwick Stages*, 98 Cal.App. 268, 274 [276 P. 1055].)

The nugatory appeals from the verdict and from the order denying a new trial are dismissed. The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied July 16, 1959, and appellants' petition for a hearing by the Supreme Court was denied August 19, 1959.